CITY OF CHILLICOTHE, Appellant,

v.

FREY, Appellee.

[Cite as *Chillicothe v. Frey*, 156 Ohio App.3d 296, 2004-Ohio-927.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 03CA2710.

Decided Feb. 26, 2004.

James E. Barrington, for appellant.

David H. Bodiker and John M. Scherff, for appellee.

KLINE, Presiding Judge.

{¶ 1} The city of Chillicothe ("city") appeals from the Chillicothe Municipal Court's findings of fact, conclusions of law, and journal entry granting defendant Brian L. Frey's motion to suppress evidence obtained during the course of an illegal stop and warrantless search. The city alleges that the arresting officer had a reasonable, articulable suspicion that criminal activity had taken place, and, therefore, his stop of Frey's automobile did not violate Frey's constitutional rights. Because we find that the duration of the stop was not commensurate with the alleged headlight violation offered as justification for the stop, and because we find that the arresting officer lacked a reasonable, articulable suspicion to

constitutionally stop Frey, we disagree. Accordingly, we overrule the city's assignment of error and affirm the judgment of the trial court.

I

{¶ 2} At approximately 5:00 a.m. on October 4, 2002, Sergeant Bamfield of the Chillicothe Police Department was walking from his cruiser into the law enforcement complex. As he was walking, Sergeant Bamfield saw Frey, whom he recognized, walking down an alley approximately one-half block away. Sergeant Bamfield noticed that Frey was walking away from him and that he appeared to be carrying something heavy. Sergeant Bamfield returned to his cruiser and went to stop Frey.

{¶ 3} Once Sergeant Bamfield located Frey again, Frey had already entered his vehicle and begun traveling down another adjoining alley. Sergeant Bamfield followed Frey's vehicle from behind and stopped Frey, allegedly under the pretext of a headlight violation. Sergeant Bamfield testified that he did not actually observe Frey's burnt-out headlight immediately before initiating the stop. However, Sergeant Bamfield indicated that he had observed Frey's vehicle earlier in the evening, and, at that time, the vehicle had only one working headlight. Sergeant Bamfield further testified that Frey had been driving the vehicle for several weeks with only one working headlight.

{¶ 4} Sergeant Bamfield approached Frey's vehicle and observed a red and blue bag on the passenger seat. The Sergeant asked Frey about the bag, and Frey identified it as his. Shortly thereafter, Officer Buchanan arrived on the scene, having heard on the police radio that Sergeant Bamfield was stopping Frey. When Officer Buchanan arrived, Sergeant Bamfield left the scene of the traffic stop and walked down the alley where he first observed Frey. After checking some vehicles, he noticed a pickup truck with a window that appeared to have been tampered with. The Sergeant radioed the police dispatcher and obtained the name of the truck's owner. Sergeant Bamfield knocked on several apartment doors and located the truck's owner, Terry Poole. Poole accompanied Sergeant Bamfield to his truck, and, after inspecting it, informed the sergeant that his bowling bag was missing.

{¶ 5} While detaining Frey, Officer Buchanan asked him about the red and blue bag. Frey opened the bag and exhibited its contents to the officer. Frey eventually showed Officer Buchanan the name tag on the bag, which contained the name "Terry Poole." Sergeant Bamfield radioed a description of the bowling bag to Officer Buchanan, and Officer Buchanan confirmed that the name tag on the bag in Frey's possession matched the name of the truck's owner. Sergeant Bamfield returned to Frey's vehicle, wrote him a ticket for the headlight violation, and arrested him for receiving stolen property.

{¶ 6} Frey filed a motion to suppress the evidence the police obtained during the October 4th stop on the grounds that the police lacked probable cause to stop Frey and that the police seized the evidence pursuant to a warrantless search in violation of his Fourth Amendment rights.

{¶ 7} After conducting a hearing on the motion to suppress and hearing the testimony of Sergeant Bamfield and Officer Buchanan, the trial court rendered findings of fact, conclusions of law, and a journal entry granting Frey's motion to suppress, on the ground that the city had failed to demonstrate enough facts to justify stopping Frey. The city timely appealed, pursuant to Crim.R. 12(J), asserting two assignments of error: "(1) The trial court committed error prejudicial to the city of Chillicothe, Ohio (plaintiff-appellant) by granting the motion to suppress material and essential evidence; and (2) The trial court erred as a matter of law, to the manifest prejudice of plaintiff, in finding that the investigative officers lacked reasonable articulable suspicion to initiate contact with the defendant-appellee and to detain him for a reasonable time, i.e. the findings underlying the decision were erroneous."

## II

{¶ 8} As a preliminary matter, we note that the state failed to brief and argue separately each of its assignments of error as required by App.R. 16(A)(7). App.R. 12(A)(2) permits us to disregard any assignment of error that an appellant fails to argue separately. However, in the interest of justice, we consolidate the state's assignments of error into one assignment of error as follows: "The trial court erred, to the manifest prejudice of the city, in concluding that the investigative officers lacked reasonable articulable suspicion to initiate contact with and detain Frey for a reasonable time, and, accordingly, granting Frey's motion to suppress."

{¶ 9} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution provide for "[t]he right of the people to be secure * * * against unreasonable searches and seizures * * *." A search or seizure conducted without a prior finding of probable cause by a judge or magistrate is per se unreasonable, pursuant to the Fourth Amendment, subject to a few specific and well-delineated exceptions. *California v. Acevedo* (1991), 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619; *State v. Kessler* (1978), 53 Ohio St.2d 204, 207, 7 O.O.3d 375, 373 N.E.2d 1252. The prosecution has the burden of establishing the application of one of the exceptions to this rule designating warrantless searches as per se unreasonable. *Id.* A court must exclude any evidence obtained in violation of the accused's Fourth Amendment rights. *Mapp v. Ohio* (1961), 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081. The purpose of this exclusionary rule is to remove any incentive to violate the Fourth Amend-

ment and, thereby, deter police from unlawful conduct. *State v. Jones* (2000), 88 Ohio St.3d 430, 435, 727 N.E.2d 886.

{¶ 10} Our review of a decision on a motion to suppress presents mixed questions of law and fact. *State v. Hatfield* (Mar. 11, 1999), Ross App. No. 98CA2426, 1999 WL 158472, citing *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539, citing *United States v. Martinez* (C.A.11, 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court is in the best position to evaluate witness credibility. *State v. Dunlap* (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988. Accordingly, we must uphold the trial court's findings of fact if the record supports them by competent, credible evidence. Id. We then conduct a de novo review of the trial court's application of the law to the facts. *State v. Anderson* (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034.

{¶ 11} Here, the city does not challenge the trial court's findings of fact. Rather, the city argues that the trial court inappropriately applied the law to the facts of the case. The city first argues that, but for the fact that Frey reached his car before Sergeant Bamfield was able to stop him, the contact would have been a consensual encounter not subject to Fourth Amendment protections. The city claims that the character of the contact should not change simply because Frey entered his car and began driving before Sergeant Bamfield actually stopped him. Further, the city argues that because Sergeant Bamfield observed Frey driving with only one headlight earlier in the evening, the stop was a valid traffic stop. Alternatively, the city argues that an officer who sees a person he claims is a "known thief," carrying a large, heavy object down an alley at 5:00 a.m., has a reasonable, articulable suspicion to believe that criminal activity is taking place. Therefore, the city argues that Sergeant Bamfield properly stopped and detained Frey. We disagree with each of the arguments advanced by the city.

{¶ 12} As noted by the trial court, the United States Supreme Court has identified three categories of police-citizen contact: the consensual encounter, the investigatory detention, and a custodial arrest. See *Florida v. Royer* (1982), 460 U.S. 491, 501–507, 103 S.Ct. 1319, 75 L.Ed.2d 229; *United States v. Mendenhall* (1980), 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497. The consensual encounter and the investigatory detention are relevant here.

{¶ 13} The first type of police-citizen contact, a consensual encounter, involves a police officer's approaching a person in a public place, engaging the person in conversation, and requesting information from the person, as long as the person is free to walk away. Id., 446 U.S. at 554, 100 S.Ct. 1870, 64 L.Ed.2d 497. A consensual encounter does not constitute a seizure that implicates the Fourth Amendment guarantees unless the police have restrained the person's liberty, by physical force or display of authority, in such a way that a reasonable person

would not feel free to walk away. Id., 446 U.S. at 553–554, 100 S.Ct. 1870, 64 L.Ed.2d 497. Unlike a consensual encounter, an investigative detention, or "*Terry* stop," does constitute a seizure that implicates the Fourth Amendment. *State v. Taylor* (1995), 106 Ohio App.3d 741, 751, 667 N.E.2d 60.

{¶ 14} For purposes of the Fourth Amendment, a "seizure" occurs only when, in view of all of the circumstances surrounding the incident, the police officer restrains the person's liberty, either by physical force or by show of authority, such that a reasonable person would not feel free to decline the officer's request and walk away. *State v. Williams* (1990), 51 Ohio St.3d 58, 61, 554 N.E.2d 108. When a seizure occurs, the officer must have a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent. *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889; see, also, *State v. Chatton* (1984), 11 Ohio St.3d 59, 61, 11 OBR 250, 463 N.E.2d 1237. "The articulable and reasonable suspicion must exist in the officer's mind at the time of the stop and cannot be based on facts obtained after the initial stop." *State v. Anderson* (1995), 100 Ohio App.3d 688, 692, 654 N.E.2d 1034. As noted by the trial court, "[t]he investigating detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or dispel his suspicions." *Taylor*, supra, 106 Ohio App.3d at 748, 667 N.E.2d 60. "The lawfulness of the initial stop will not support a 'fishing expedition' for evidence of crime." *State v. Gonyou* (1995), 108 Ohio App.3d 369, 372, 670 N.E.2d 1040, quoting *State v. Smotherman* (July 29, 1994), Wood App. No. 93WD082, 1994 WL 395128, citing *State v. Bevan* (1992), 80 Ohio App.3d 126, 130, 608 N.E.2d 1099.

{¶ 15} Here, the city essentially urges us to find that Sergeant Bamfield's stopping Frey, once he was in his automobile, was somehow a consensual encounter. The city claims there should be nothing magical about the fact that Frey was in his automobile at the time of the stop. The city goes so far as to compare Frey's "escape" to the sanctuary of his vehicle to that of a "medieval rascal finding sanctuary by beating the King's knaves to the Church." The evidence simply does not support that conclusion. The instant that Sergeant Frey demonstrated a show of authority by utilizing his cruiser lights to signal Frey to stop, the city could no longer claim that the contact was consensual. Thus, in order for the sergeant to properly stop Frey, he must have had, at a minimum, reasonable, articulable suspicion that criminal behavior had occurred or was imminent.

{¶ 16} The city offers two separate reasons to support its contention that Sergeant Bamfield had a reasonable, articulable suspicion for stopping Frey. The first reason is that Frey operated his automobile without two working headlights, as required by R.C. 4513.03 and 4513.04. Here, Sergeant Bamfield did not observe that Frey had a headlight out contemporaneous with the stop, but

observed the burnt out headlight several hours earlier. We note that the Ohio Supreme Court has held that "[w]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaged in more nefarious criminal activity." *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091, at syllabus. However, the United States Supreme Court has held that the scope and duration of a routine traffic stop "must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer* (1983), 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229.

{¶ 17} Thus, assuming arguendo that Sergeant Bamfield had probable cause that a traffic violation had occurred or was occurring, due to his observation of Frey's burnt-out headlight earlier in the evening, the length of the traffic stop could last no longer than necessary to confirm the headlight violation and issue a ticket. Here, Sergeant Bamfield confirmed that Frey's headlight was not operational. However, rather than beginning to write a ticket for the confirmed violation or designating that Officer Buchanan do so, Sergeant Bamfield left the scene of the traffic stop and returned to the alley where he first observed Frey, looking for signs of criminal activity. Sergeant Bamfield ultimately discovered a vehicle that appeared to have been disturbed. He then radioed the dispatcher, learned the name of the truck's owner, and knocked on doors until he located the owner. The sergeant accompanied the owner to the vehicle and learned that a red and blue duffel-type bag, matching the description of the bag in Frey's car, was missing. The trial court found that the sergeant was away from the scene of the traffic stop for "about five minutes." However, pursuant to Sergeant Bamfield's testimony, the stop lasted a total of 34 minutes from the time of the initial stop until the tow truck arrived, and the last unit on the scene marked back in service.

{¶ 18} In determining whether Frey's detention was reasonable, we must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation. See *State v. Cook* (1992), 65 Ohio St.3d 516, 521–522, 605 N.E.2d 70 (15–minute detention reasonable); *United States v. Sharpe* (1985), 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605, 615–616 (20–minute detention reasonable). Here, we find the 34–minute detention unreasonable in light all of the facts and circumstances. We note that the justification for the stop was the pretext of an easily confirmed headlight violation. The officer did not even witness the burnt-out headlight contemporaneously with the stop. Additionally, the Sergeant did not begin writing the citation for the headlight violation until he returned from his other,

off-scene investigation. Having found that the stop was not a valid stop for a headlight violation, we must now determine whether Sergeant Bamfield had any reasonable, articulable suspicion to justify stopping Frey.

{¶ 19} The city asserts that Sergeant Bamfield had a reasonable, articulable suspicion to justify an investigative detention of Frey based upon the fact that he was a "known and convicted thief" who was observed carrying a large, heavy object down an alley at approximately 5:00 a.m. Sergeant Bamfield testified that Frey had been a "suspect in other thefts" and had previously been "arrested for theft." The city, however, offered no other evidence to support its assertion that Frey was a "known and convicted thief." While there is a document in the trial court file titled "Offense History Listing," which purportedly lists Frey's prior offenses, we note that it is not file stamped, and, therefore, is not properly a part of the record. Further, the city did not offer the "Offense History Listing" as an exhibit at the hearing on Frey's motion to suppress evidence.

{¶ 20} Even if the city successfully established that Frey was a "known and convicted thief," the "courts of this state have consistently held that a person cannot be detained solely upon the ground that the person * * * has a reputation for engaging in criminal behavior." *State v. Taylor* (2000), 138 Ohio App.3d 139, 147–148, 740 N.E.2d 704, citing *State v. Bogart* (Feb. 11, 1994), Lake App. No. 93–L–088, 1994 WL 45266. See, also, *State v. Fahy* (1988), 49 Ohio App.3d 160, 551 N.E.2d 1311 (holding that "[p]olice may not search persons based solely on their reputation as drug users and their ambiguous movements at the trunk of a car").

{¶ 21} Here, when viewing the totality of the circumstances, we do not believe that sufficient articulable facts existed to constitutionally justify the stop. In the absence of evidence regarding Frey's alleged criminal history, we have Sergeant Bamfield's observation of someone walking in an alley and carrying something at approximately 5:00 a.m. The city presented no evidence that the area, just a block from the police station, was a high-crime area or that there had been any recent criminal activity reported that would cast suspicion upon Frey's conduct. See *State v. Bobo* (1988), 37 Ohio St.3d 177, 179, 524 N.E.2d 489. Without any facts tending to show the existence of criminal activity in the area that would make Frey's conduct suspicious, we do not believe that Frey's conduct is so suspicious as to warrant an exception to an individual's Fourth Amendment right to be free of unreasonable searches and seizures. The fact that Sergeant Bamfield and Officer Buchanan recovered stolen property cannot justify the otherwise unlawful nature of this investigative stop.

{¶ 22} Accordingly, we overrule the city's assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**304**

Evans, J., concurs.

Peter B. Abele, J., dissents.