[Cite as *State v. Harris*, 2012-Ohio-4237.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 11CA3298 |
| | : | |
| vs. | : | **Released: September 14, 2012** |
| | : | |
| LONELL L. HARRIS, | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Jonathan D. Schmidt, Chillicothe, Ohio, for Appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Jeffrey C. Marks, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio, for Appellee.

_____

McFarland, J.:

{¶1} Appellant, Lonell L. Harris, appeals from his conviction in the Ross County Court of Common Pleas, for cocaine possession and trafficking. Appellant contends that the trial court erred in denying his motion to suppress all evidence obtained from an allegedly illegal stop of a motor vehicle in which he was traveling. After reviewing the record, the Trooper involved here had a reasonable articulable suspicion that the driver of the vehicle in which Appellant Harris was traveling violated a traffic law by following another vehicle too closely. Therefore, the traffic stop was

justified. As such, the motion to suppress was properly denied.  Accordingly, we affirm the trial court's judgment.

FACTS

{¶2} On May 20, 2010, Ohio State Highway Patrol Trooper Benjamin Seabolt observed a 2010 silver chevrolet impala, operated by Caprisha [sic] Bradford, traveling southbound on U.S. Route 23 in Ross County, Ohio. The trooper first saw a tractor trailer, also headed southbound, approximately 200-250 yards away from him.  The impala was traveling directly behind the tractor trailer.  Given the circumstances, Trooper Seabolt believed the impala to be following a tractor trailer more closely than was reasonable and prudent, in violation of R.C. 4511.34, so he initiated a traffic stop.  Trooper Seabolt then encountered Appellant, Lonell L. Harris, who was riding as a right rear passenger.   Trooper Seabolt also discovered Chyquita Lee, a right front passenger, and another occupant, a female. [1]

{¶3} After Trooper Seabolt stopped the vehicle, he approached the right passenger side of the vehicle.  Ms. Lee initially failed to roll down her window, however, when she did, Trooper Seabolt detected an odor of marijuana coming from the vehicle.  He also observed loose marijuana flakes on the right front passenger door, the middle of the front seat, and the

---

[1] The transcript reveals this female's last name was "Nunn."

middle of the rear seat. The Trooper advised the four of their *Miranda* rights and requested that Ms. Bradford exit the vehicle. Trooper Seabolt proceeded to question her and the other passengers. Ms. Bradford eventually admitted there was a quarter ounce of crack cocaine in the vehicle. Appellant also admitted that there was crack cocaine under Ms. Lee's seat. Trooper Seabolt thereafter conducted a search of the Impala and subsequently charged Appellant and Ms. Lee with (1) trafficking in crack cocaine, a violation of R.C. 2925.03(C)(4)(d), and (2) possession of crack cocaine, a violation of R.C.2925.11(A). Appellant was eventually indicted on drug abuse and trafficking, both felonies of the third degree.

{¶4} On January 14, 2011, Appellant filed a motion to suppress all evidence obtained as a result of the traffic stop. Appellant asserted that the trooper lacked reasonable articulable suspicion and/or sufficient probable cause to stop the vehicle.

{¶5} The court held a suppression hearing wherein Trooper Seabolt testified that he was not able to see the silver car until it was approximately 200-250 yards away from him, due to the vehicle's being so directly behind and close to the tractor trailer. In the Trooper's opinion, the impala was approximately 1.5 car lengths from the tractor trailer. The Trooper visually estimated the impala's speed to be approximately 55-60 miles an hour.

Sixty mph is the posted speed in the area. He further opined that based on the location of the tractor trailer and the impala, another vehicle could not have gotten safely between the two. The Trooper also testified that as the vehicles in question approached him, the tractor trailer continued to move at the same rate of speed while the impala was gaining on the tractor trailer. When the vehicles at issue were past the Trooper, approximately 150-200 yards further southbound, Trooper Seabolt believed there was a possibility the impala was going to strike the tractor trailer in the rear. At this point, the impala "jerked" into the left hand lane and passed the tractor trailer. The Trooper then began to pursue the impala. It took approximately two miles for Trooper Seabolt to catch up with the impala.

{¶6} The State of Ohio also introduced a DVD of the traffic stop during the suppression hearing. Neither party objected to the playing of the DVD. The alleged traffic violation was not captured on the DVD, however, both defendants made various incriminating statements which were contained on the DVD.

{¶7} Appellant also testified at the hearing that the group in the impala left from Columbus and were headed to Gallipolis to pick up his brother. The group stopped in Chillicothe at a gas station. Appellant first saw the Trooper as they were re-entering the highway. Appellant testified

they were attempting to pass a semi in the middle lane and were behind him,

intending to get into the left-hand lane.   They were behind the semi a few

seconds, "not that long." [2] He did not know nor did he attempt to estimate

how close the Impala was to the rear of the semi tractor trailer. Appellant

further testified they were in the far left lane when they passed the Trooper,

and that the Trooper traveled "a nice little distance" before he pulled over

their vehicle.

{¶8} On April 21, 2011, the court filed its judgment entry denying the

motion to suppress.

{¶9} On August 31, 2011, Appellant pled no contest to both charges.

The judgment entry of sentence was filed on September 22, 2011. Appellant

now brings his timely appeal, setting forth a single assignment of error for

our review.

## ASSIGNMENT OF ERROR

I.      THE TRIAL COURT ERRED IN FAILING TO GRANT THE
        MOTION TO SUPPRESS.

## LEGAL ANALYSIS

{¶10} In his sole assignment of error, Appellant contends that the trial

court erred in failing to grant the motion to suppress all evidence obtained

---

[2] Appellant first indicated they were behind the semi five to ten seconds.  He later indicated it was two to five seconds.

from the allegedly illegal stop because there was no probable cause. Specifically, Appellant argues that there was no evidence of any other infraction of traffic laws, other than following too close, R.C. 4511.34, and that the amount of time the Impala was behind the tractor trailer, allegedly 5 seconds, was reasonable and complied with the statute. As such, Appellant argues the stop of the vehicle was improper and all evidence obtained as a result of the stop should have been suppressed.

{¶11} Our review of a decision on a motion to suppress "presents mixed questions of law and fact." *State v. McNamara,* 124 Ohio App.3d 706,710, 707 N.E.2d 539 (1997); citing *United States v. Martinez* (C.A.11, 1992), 949 F.2d 1117, 1119. When considering a motion to suppress, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate witness credibility. *State v. Burnside,* 100 Ohio St. 3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶8. Accordingly, we must uphold the trial court's findings of fact if competent, credible evidence in the record supports them. *State v. Landrum,* 137 Ohio App. 3d 718, 722, 739 N.E.2d 1159 (2000). We then conduct a de novo review of the trial court's application of the law to the facts. *State v. Anderson*, 100 Ohio App.3d 688, 691, 654 N.E.2d 1034 (1995); *State v. Fields*, 4th Dist. No. 99CA11, 1999 WL 1125120,*v2.

{¶12} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide for "[t]he right of the people to be secure***against unreasonable searches and seizures***." Searches and seizures conducted without a prior finding of probable cause by a judge or magistrate "are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions." *California v. Acevedo*, 500 U.S. 565, 580, 111 S.Ct., 1982 (1991) (internal citations omitted). *State v. Tincher*, 47 Ohio App.3d 188, 190, 548 N.E.2d 251 (1988).

{¶13} The Supreme Court of Ohio has stated that " '[p]robable cause is certainly a complete justification for a traffic stop,' but the court has 'not held that probable cause is required.'" *State v. Ward,* 4th Dist. No. 10CA30, 2011-Ohio-1261,¶13, quoting *State v. Mays,* 119 Ohio St. 3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, at ¶23.  Instead, to justify a traffic stop based upon less than probable cause, an officer must be able to articulate specific facts that would warrant a person of reasonable caution to believe that the person has committed, or is committing, a crime, including a minor traffic violation.  See *Terry v. Ohio*, 392 U.S. 1, 21, 88. S.Ct. 1868 (1968). See, also, *Mays* at ¶8.  *Chillicothe v. Frey,* 156 Ohio App.3d  296, 2004-Ohio-927, 805 N.E.2d 551 at ¶14; *State v. Garrett,* 4th Dist. App. No. 05CA802,

2005-Ohio-5155, ¶10. Reasonable suspicion sufficient to conduct a stop exists if there is "at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673 (2008). As we explained in *State v. Emerick,* 4th Dist. No. 06CA45, 2007-Ohio-4398, ¶15:

> "A traffic stop may pass constitutional muster even where the state cannot convict the driver due to a failure in meeting the burden of proof or a technical difficulty in enforcing the underlying statute or ordinance.***The very purpose of an investigative stop is to determine whether criminal activity is afoot. This does not require scientific certainty of a violation nor does it invalidate a stop on the basis that the subsequent investigation reveals no illegal activity is present."

{¶14} A court that must determine whether a law enforcement officer possessed a reasonable suspicion or probable cause to stop a vehicle must examine the "totality of the circumstances." Id., at ¶13. See, e.g., *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct.744 (2002). Moreover, the touchstone of a Fourth Amendment analysis is the reasonableness of the intrusion. See, e.g., *Pennsylvania v. Mimms*, 434 U.S. 106, 108-109, 98 S.Ct. 330, (1997).

{¶15} A police officer may stop the driver of a vehicle after observing a de minimis violation of traffic laws. *State v. Guseman*, 4th Dist. No. 08CA15, 2009-Ohio-952 ¶20, citing, *State v. Bowie,* 4th Dist. No. 01CA34,

2002-Ohio-3553, ¶8, 12, and 16, citing *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769 (1996). See, also, *Dayton v. Erickson*, 76 Ohio St.3d 3, 655 N.E.2d 1091 (1996), syllabus.

{¶16} In the case sub judice, we agree with the trial court's conclusion that Trooper Seabolt had probable cause to stop the vehicle in question for a traffic violation. Here, the trial court used a higher standard in considering the motion. Had the trial court ruled Trooper Seabolt articulated in the suppression hearing reasonable suspicion that the traffic statute had been violated, the finding would have been sufficient for this court to affirm.

R.C. 4511.34, Space between moving vehicles, states in pertinent part:

> "The operator of a motor vehicle, streetcar, or trackless trolley
> shall not follow another vehicle, streetcar, or trackless trolley
> more closely than is reasonable and prudent, having due regard
> for the speed of such vehicle, streetcar, or trackless trolley, and
> the traffic upon and the condition of the highway."

{¶17} In *State v. Ward,* 4th Dist. No. 10CA30, 2011-Ohio-1261, ¶15, we noted that "[a]n officer's direct observation that a vehicle is following another vehicle too closely provides probable cause to initiate a lawful traffic stop." *State v. Kelly,* 188 Ohio App.3d 842, 2010-Ohio-3560, 937 N.E.2d 149, at ¶ 15, citing S*tate v. Perry*, 12th Dist. No. CA2004-11-016, 2005-Ohio-6041, ¶12.

{¶18} Here, Trooper Seabolt testified he was sitting stationery when he first observed the tractor-trailer, 200-250 yards away from him. The vehicle was not visible initially. As the tractor trailer approached him, the impala seemed to be gaining on the trailer, but the trailer was maintaining the same speed. When the tractor trailer and the silver impala passed Trooper Seabolt, he was approximately thirty-five feet away from them and they were traveling in the middle lane. The trooper further testified that the impala was approximately 1.5 car lengths from the tractor trailer. He estimated the impala's speed at fifty-five to sixty miles per hour and observed the impala get closer to the tractor trailer than the 1.5 lengths initially observed. When the vehicles were past the Trooper, approximately 150-200 yards further southbound, he believed that there was a possibility that the impala was going to strike the tractor trailer in the rear. At this point, the impala "jerked" to the left into the left hand lane, passed the tractor trailer, and the trooper decided to pursue. It took approximately two miles for the trooper to catch up to the impala, a little over a minute.

{¶19} Trooper Seabolt further explained that the video camera mounted to the windshield in his cruiser activates when the trooper activates the overhead lights. When the overhead lights come on, the camera goes back sixty seconds. Trooper Seabolt recorded the actions and statements of

the defendants during the traffic stop.  He preserved the video and audio recording by removing the flash drive, downloading it to a computer at the patrol post, and making a copy of the DVD.  Apparently, Trooper Seabolt did not activate the overhead lights in time to record the "following too closely" violation.

{¶20} When cross-examined about his ability to estimate the speed of traffic approximately 200-250 yards down the road, Trooper Seabolt stated he was required to pass a test of visual estimate of vehicle speed, plus or minus three miles an hour, in order to be certified using electronic speed measuring devices. And, he was trained to estimate vehicles' speeds whether they are at steady speed, increasing, or decreasing. Trooper Seabolt further testified that while he was taught mathematical equations at the academy, [3] with regard to what is reasonably safe in relationship to R.C. 4511.34, "the general rule of one car length for every ten miles an hour is the proven safe and reasonable following distance."   He further explained this general rule was based upon "mathematical equations I do not have with me today, based upon the average driver's reaction time and the amount of feet that you're traveling per second at a certain speed."  This evidence adduced at the suppression hearing supports the conclusion that Trooper Seabolt possessed

---

[3] We assume this to be the Ohio State Highway Patrol Academy.

at least reasonable suspicion that the driver of the Appellant's vehicle violated R.C. 4511.34. That Ohio courts have held the police may use a general rule of one car length for every ten miles per hour the car is traveling as an indicator that a driver has violated [R.C. 4511.34] was discussed at length in this Court's decision in *Ward,* supra, ¶16.

{¶21} In this case, we reject Appellant's assertion that Appellee was required to present evidence as to the length of time the impala followed the tractor trailer. The statute itself does not specify as to a length of time but directs that the operator of a motor vehicle shall not follow another vehicle "more closely than is reasonable and prudent, having due regard for the speed of such vehicle…the traffic upon and the condition of the highway…." Despite the fact the violation was not captured on the video, the trial court had competent credible evidence in the form of Trooper Seabolt's testimony.  Here, the trial court found the Trooper's testimony to be more credible than that offered by Appellant. Trooper Seabolt was able to articulate specific facts as to the following: where he was when he first saw the impala; what rate of speed he estimated the impala to be traveling; what distance he estimated between the impala and the tractor trailer; and what he believed to be a dangerous situation, should the impala strike the rear of the trailer.  By contrast, the substance of Appellant's testimony was that the

impala was "not that long" behind the semi and that the Trooper was a "nice little distance" before he caught up to the impala and initiated the stop. Appellant acknowledged he did not know the distance between the two vehicles, whereas the trooper estimated the distance to be only 1.5 car lengths. Trooper Seabolt based his estimations on his experience and training, whereas Appellant mentioned no particular expertise. Appellant's version of the incident completely differs where Trooper Seabolt's testimony was that when the vehicles passed him, they were both in the middle lane. By contrast, Appellant testified that they had already passed the semi and were in the far left-hand lane when they passed the trooper. We note that observing and evaluating the credibility of the witnesses is the province of the trial court and we defer to the trial court's judgment here. See *State v. Dunlap*, supra.

{¶22} Applying the law de novo, we find competent, credible evidence in the record to support the trial court's factual findings and decision. As such, we conclude the trial court did not err by finding the Trooper had probable cause to initiate a traffic stop for "following too closely." Accordingly, Appellant's sole assignment of error is overruled. The decision of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, P.J. and Kline, J: Concur in Judgment and Opinion.

For the Court,

BY: _____
        Matthew W. McFarland, Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**