[Cite as *State v. Littlefield*, 2013-Ohio-481.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | |
|---|---|
| STATE OF OHIO, | : |
| | : |
| Plaintiff-Appellee, | : Case No. 11CA3247 |
| | : |
| vs. | : |
| | : DECISION AND JUDGMENT |
| SHERILL LITTLEFIELD, | : ENTRY |
| | : |
| Defendant-Appellant. | : **Released: 02/07/13** |

_____
APPEARANCES:

Thomas M. Spetnagel and Paige J. McMahon, Chillicothe, Ohio, for
Appellant.

Michele R. Rout, Assistant Law Director, Chillicothe, Ohio, for Appellee.
_____

McFarland, P. J.

{¶1} Sherill Littlefield appeals from her conviction in the Chillicothe

Municipal Court, for the offense of operating a motor vehicle with a

prohibited blood-alcohol concentration in violation of R.C.

4511.191(A)(1)(A). Appellant contends that the trial court erred by (1)

denying her motion to suppress all evidence obtained from an allegedly

illegal stop of her motor vehicle, and (2) denying her motion to suppress the

results of her breath test when the trooper involved herein was unable to

identify which Intoxilyzer 8000 model he used on the night in question.

After reviewing the record, the trooper testified to his reasonable articulable suspicion that the Appellant had violated a traffic law by failing to stay within marked lanes. Therefore, the traffic stop was justified. As such, the motion to suppress was properly denied on this basis. We also find the State demonstrated substantial compliance with the Department of Health regulations in administering Appellant's breath test. The trooper was a certified operator of the Intoxilyzer 8000 machine located at the Ross County Law Enforcement Complex on January 23, 2011, and properly identified it by serial number. There was no prejudice to Appellant in this matter by the lack of strict compliance with regard to the trooper's failure to distinguish the particular Intoxilyzer model used to test Appellant's breath. Therefore, Appellant's breath test was admissible and the trial court did not err. Accordingly, we affirm the trial court's judgment.

FACTS

{¶2} During the early morning of January 23, 2011, Ohio State Highway Patrol Trooper Robert Haislop ("the trooper") observed Appellant's vehicle traveling ahead of him, approximately 100 feet, in the northbound passing lane of S.R. 159 in Ross County, Ohio. Appellant's vehicle was weaving within its lane. Traffic was sparse and the lanes were snow-covered. As the trooper followed, Appellant made several marked

lane violations of the center fog line. After following Appellant approximately ½ to one full mile and observing the marked lanes violations, the trooper pulled her over. As he approached Appellant's vehicle, he made several observations that led him to believe Appellant had been consuming alcohol. As a result, the trooper asked Appellant to step out of her vehicle, and he subsequently conducted various field sobriety tests. Based upon his observations, the trooper arrested Appellant for driving under the influence of an alcoholic beverage, R.C. 4511.19(A)(1)(D), and eventually transported her to the Ross County Law Enforcement Complex. While there, Appellant took a breath test on the Intoxilyzer 8000 which resulted in a .117 test grams per 210 liters of breath. She was then charged with a violation of R.C. 4511.19(A)(1)(A).[1]

{¶3} Appellant filed a motion to suppress arguing there was no reasonable articulable suspicion that Appellant had engaged in criminal behavior and further, that the State failed to comply with the rules and regulations of the Ohio Department of Health. The court subsequently held a suppression hearing. Trooper Haislop testified he is a ten-year employee of the Ohio State Highway Patrol. He testified to the marked lanes violations as indicated above and the State played the trooper's video recording of the

---

[1] Appellant was also charged with a marked lanes violation, R.C. 4511.33 and a seat-belt violation, R.C. 4513.263. These charges, along with the R.C. 4511.19(A)(1)(D) violation were subsequently dismissed when Appellant entered a no-contest plea to the R.C. 4511.19(A)(1)(A) charge.

violations. The trooper also testified his video equipment was in working order at the time he observed Appellant's vehicle.

{¶4} Regarding the breath test, Trooper Haislop testified he is a certified operator of the Intoxilyzer 8000. The trooper testified he took a training course and passed a test in order to be certified. The Intoxilyzer 8000 machine used to perform Appellant's breath test was located in the Ross County Law Enforcement Complex. The instrument's serial number was 80-004169. The trooper testified generally when he activates the machine, it "boots up," and automatically checks itself as to proper functioning. The trooper testified he logs into the system by scanning his certified operator's card into the machine. His testimony revealed that the above activation, self-check, and log-in occurred on the date of Appellant's stop and breath test. The trooper further testified he observed Appellant for the required 20- minute period, the machine performed its own series of checks, and then Appellant was asked to blow into the machine. The trooper testified, again generally, that once a sample is complete, the machine analyzes the sample and performs another self-check. At that point, more information is entered into the system and more checks are performed. Then a second breath sample is taken. The trooper testified the machine was

working properly on January 23, 2011, and it produced the two breath samples.

{¶5} On cross-examination, Trooper Haislop testified that the certification bottle number on the date of the stop was 0-5-2-3. The dry gas standard lot number is 6-4-1-3-5-8. The dry gas lot number corresponded to the same gas lot number that was used the previous October to calibrate the machine. He also testified regarding the manufacturer's certificate for the analysis of the dry gas lot number of 6-4-1-3-5-8. The manufacturer's certificate was certified from the Department of Health. Defense counsel also inquired: "Is this an Intoxilyzer 8005 or Intoxilyzer OH5 or OH2?" The trooper responded: "I don't know sir. I just know it is an Intoxilyzer 8000." Counsel further questioned: "Is there any document that you can point us to that would tell us whether it's an OH5 or OH2?" The trooper responded: "No sir."

{¶6} At the conclusion of the hearing, "State's Exhibit "A," the breath test results, were admitted into evidence. " State's Exhibit "B", the certified operator's card, was also admitted. The front of the card states: "Robert Haislop is authorized to perform breath tests using the Intoxilyzer 8000 under the provisions of 3701.43 of the Ohio Revised Code and chapters 3701-53-01 through 10 of the Ohio Administrative Code." In addition,

"OH-5" appears to be stamped on the back of the card. The back of the card states that the card is the property of the Ohio Department of Health. Finally, a packet of 6 pages of documents were admitted, which contained the following:

(1) Certificate of Calibration for the Intoxilyzer 8000, serial number 80-004169, dated November 4, 2009;

(2) Certificate of Calibration for the Intoxilyzer 8000, serial number 80-004169, dated May 26, 2009;

(3) Intoxilyzer Alcohol Analyzer Model 8000, serial number 80-004169, dated November 1, 2010;

(4) Ohio Department of Health, approval of instrument check solution, Lot of Batch # ODH-0016, dated December 16, 2009;

(5) Ohio Department of Health Instrument Certification Report, ODH SOL#ODH-0016, Lot # 641358, dated October 12, 2010; and,

(6) Certificate of Analysis for Calgaz Lot # 641358, dated July 14, 2009 with expiration date of July 14, 2011. [2]

{¶7} The above documents each contain verification of being true and accurate copies, kept in the ordinary course of business, of the originals on

---

[2] The transcript is confusing, but indicates that the documents' admission was offered by the State and stipulated with defense counsel prior to the hearing. For reasons unclear, these documents appear marked as Defendant' s Exhibit "1."

file at the Ohio Department of Health (hereinafter "DOH"). In closing, the

State offered:

> "Additionally, Your Honor, while we were talking, the trooper did realize it is an OH5 as indicated on the back of his certification. That certification and the magnetic strip that gets sent through the machine that does let him operate that machine and does properly identify him as a certified operator, which is, I guess, obviously is an OH5. The certification doesn't indicate specifically whether it's an OH5 or whether it's an OH2, but the trooper is certified and does match up with the- - was allowed to run his swipe through, and as he testified, the machine accepted him as one of the operators and it does indicate on that machine that it is an OH5. That he is certified to operate. The certification by the State do(sic) not indicate specifically which kind it is."

The trial court denied the motion to suppress.

{¶8} On May 14, 2011, Appellant pled no contest to a violation of

R.C. 4511.19(A)(1)(A). Appellant now brings this appeal, setting forth two

assignments of error for our review.

## ASSIGNMENTS OF ERROR

I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS FOR A LACK OF PROBABLE CAUSE TO INITITATE THE TRAFFIC STOP.

II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS THE RESULTS OF HER BREATH TEST.

LEGAL ANALYSIS

{¶9} Our review of a decision on a motion to suppress "presents mixed questions of law and fact." *State v. McNamara,* 124 Ohio App.3d 706, 710, 707 N.E.2d 539 (1997); citing *United States v. Martinez* (C.A.11, 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court is in the best position to evaluate witness credibility. *State v. Carter*, 72 Ohio St.3d 545, 552, 651 N.E.2d 965, 973 (1995). Accordingly, we must uphold the trial court's findings of fact if competent, credible evidence in the record supports them. *State v. Guysinger*, 86 Ohio App.3d 592, 594, 621 N.E.2d 726, 727 (1993). We then conduct a de novo review of the trial court's application of the law to the facts. *State v. Anderson*, 100 Ohio App.3d 688, 691, 654 N.E.2d 1034, 1036 (1995).

The Traffic Stop

{¶10} In her first assignment of error, Appellant contends the trial court erred in failing to grant the motion to suppress all evidence obtained from the allegedly illegal stop because there was no probable cause. Specifically, Appellant argues the trooper did not possess a reasonable suspicion of criminal activity to stop her vehicle because the video recording of the stop demonstrated that obscured lane markings and lack of other travel on the roadway would not permit an individual of reasonable caution

to suspect Appellant had violated the marked lanes ordinance.   Appellant also argues  the trooper's subjective beliefs regarding the alleged violation of marked lanes were not accurate when compared to the video evidence. As such, Appellant argues the stop of the vehicle was improper and all evidence obtained as a result of the stop should have been suppressed.

{¶11} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide for "[t]he right of the people to be secure***against unreasonable searches and seizures***." Searches and seizures conducted without a prior finding of probable cause by a judge or magistrate "are per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347,357, 88 S. Ct. 507, 514 (1967); *State v. Tincher*, 47 Ohio App.3d 188, 548 N.E.2d 251 (12th Dist. 1988).  If the government obtains evidence through actions that violate an accused's Fourth Amendment rights, that evidence must be excluded at trial. *State v. LeMaster,* 4th Dist. No. 11CA3236, 2012-Ohio-971, 2012 WL 762342, at ¶ 8.

{¶12} The Supreme Court of Ohio has stated that "[p]robable cause is certainly a complete justification for a traffic stop," but the court has 'not held that probable cause is required.'" *State v. Ward,* 4th Dist. No. 10CA30,

2011-Ohio-1261, 2011 WL 9178545, ¶13, citing *State v. Mays,* 119 Ohio St.

3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, at ¶23.  Instead, to justify a

traffic stop based upon less than probable cause, an officer must be able to

articulate specific facts that would warrant a person of reasonable caution to

believe that the person has committed, or is committing, a crime, including a

minor traffic violation.  See *Terry v. Ohio*, 392 U.S. 1, 21, 88. S.Ct. 1868

(1968).  See, also, *Mays* at ¶8.  *Chillicothe v. Frey,* 156 Ohio App.3d 296,

2004-Ohio-927, 805 N.E.2d 551 at ¶14; *State v. Garrett,* 4th Dist. No.

05CA802, 2005-Ohio-5155, 2005 WL 2389635, ¶10.  Reasonable suspicion

sufficient to conduct a stop exists if there is "at least a minimal level of

objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S.

119, 123, 120 S.Ct. 673 (2000).  As we explained in *State v. Emerick,* 4th

Dist. No. 06CA45, 2007-Ohio-4398, ¶15:

> "A traffic stop may pass constitutional muster even where the state cannot convict the driver due to a failure in meeting the burden of proof or a technical difficulty in enforcing the underlying statute or ordinance.***The very purpose of an investigative stop is to determine whether criminal activity is afoot.  This does not require scientific certainty of a violation nor does it invalidate a stop on the basis that the subsequent investigation reveals no illegal activity is present."

{¶13} A court that must determine whether a law enforcement officer

possessed a reasonable suspicion or probable cause to stop a vehicle must

examine the "totality of the circumstances." *Ward,* ¶14. See, e.g., *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct.744 (2002). Moreover, the touchstone of a Fourth Amendment analysis is the reasonableness of the intrusion. *Ward,* ¶14. See, e.g., *Pennsylvania v. Mimms*, 434 U.S. 106, 108-109, 98 S.Ct. 330, (1997).

{¶14} A police officer may stop the driver of a vehicle after observing a de minimis violation of traffic laws. *State v. Guseman*, 4th Dist. No. 08CA15, 2009-Ohio-952, 2009 WL 537198, ¶20, citing, *State v. Bowie,* 4th Dist. No. 01CA34, 2002-Ohio-3553, 2002 WL 1565710, ¶8, 12, and 16, citing *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769 (1996). See, also, *Dayton v. Erickson*, 76 Ohio St.3d 3, 655 N.E.2d 1091 (1996), syllabus.

{¶15} In the case sub judice, we agree with the trial court's conclusion that Trooper Haislop had probable cause to stop Appellant's vehicle for the marked lanes violation. We note, however, that the trial court used a higher standard of evaluation than necessary and that the trooper's reasonable and articulable suspicion that Appellant violated a traffic law is sufficient. The trooper testified that as he followed Appellant on S.R. 159, he observed several marked lane violations of the center fog line. Moreover, the trial court reviewed the video recording and, while acknowledging that there

were snow-covered areas on the roadway, he observed two occasions on which the white line was visible for a substantial period of time and Appellant continued to drive over it. This Court has reviewed the video recording and we agree with the trial court. We find no contradiction between the trooper's testimony and the video recording evidence. Accordingly, we overrule the first assignment of error.

The Breath Test Results

{¶16} The results of an alcohol content test administered pursuant to R.C. 4511.19 may be admitted into evidence upon a showing that the test was administered in accordance with Department of Health (hereinafter "DOH") regulations. See *State v. Hurst,* 4th Dist. No. 08CA43, 2009 Ohio 3127, 2009 WL 1830760, ¶59; *State v. Gibson,* 4th Dist. No. 04CA2805, 2005 Ohio 5273, ¶9, citing *Cincinnati v. Sand,* 43 Ohio St.2d 79, 330 N.E. 2d 908, (1975) paragraph two of the syllabus. The state need not prove strict or perfect compliance with DOH regulations, but rather, must prove "substantial compliance" with the regulations in order for the test results to be admissible. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶27; *State v. Plummer,* 22 Ohio St. 3d 292, 490 N.E.2d 902 (1986), syllabus. Only errors that are clearly de minimis in nature are excusable. *Burnside* at ¶34. Once the state shows substantial compliance

with the regulations, the burden shifts to the defendant to show prejudice resulting from the failure to strictly comply.   *Hurst,* at ¶59, citing *Plummer; State v. Wasmer,* 4th Dist. No. 714, 1994 WL 90400 (Mar. 16, 1994).

{¶17} In this matter, Appellant contends that Trooper Haislop's failure to identify the instrument model he was using to perform Appellant's breath test fatally undermines the foundation for admitting Appellant's breath test. Therefore, Appellant asserts the trial court erred in overruling the motion  to suppress the test.  In her brief, Appellant presents only the narrow question of whether Trooper Haislop's failure to identify the specific Intoxilyzer model undermines the foundation for admitting Appellant's breath.  Appellant argues the omission is problematic because OAC-3701-53-03 and OAC 3701-53-04 set forth different procedures for calibration and operation of the Intoxilyzer 8000 OH-2 and OH-5 models. Appellant is correct in that there are different established procedures for calibration and operation of the two Intoxilyzer models.

{¶18} Ohio Administrative Code 3701-53-02, breath tests, delineates the approved evidential breath testing instruments which include, pursuant to (A)(3) of that regulation, the Intoxilyzer 8000 OH-5, and pursuant to (B)(1), the Intoxilyzer 8000 OH-2.  Subpart(D) sets forth that breath samples using instruments, including the Intoxilyzer model 8000 OH-2, shall be analyzed

according to the operational checklist for the instrument being used. And, subpart (E) sets forth that breath samples using the Intoxilyzer model 8000 OH-5 shall be analyzed according to the instrument display for the instrument being used.

{¶19} Appellant has argued that there was no substantial compliance with OAC 3701-53-03, blood, urine and other bodily substance tests. That regulation states, in pertinent part: "(A) Alcohol in blood, urine and other bodily substances shall be analyzed based on approved techniques or methods." This regulation lists various approved techniques or methods, including gas chromatography, which is relevant to the OH-5 Intoxilyzer 8000 model herein. But, Appellant does not take issue with any particular aspect of the analysis, i.e. the gas chromatology performed here.

{¶20} Appellant also asserts there was no substantial compliance with OAC 3701-53-04, instrument checks, controls and certifications, which is set forth, in pertinent part, as follows:

(A) A senior operator shall perform an instrument check on approved evidential breath testing instruments listed under paragraphs (A)(1), (A)(2), and (B) of the rule 3701-53-02, no less frequently than once every seven days in accordance with the appropriate instrument checklist for the instrument being used.

(B) Instruments listed under paragraph (A)(3) of rule 3701-53-02 of the Administrative Code shall automatically perform a dry gas control test before and after every subject test and instrument certification using a dry gas standard traceable to the national institute of standards and technology (NIST).

{¶21} Subpart (A) mandates that Intoxilyzer model 8000 OH-2 must be tested at least once every seven days in accordance with its appropriate instrument checklist. Subpart (B) mandates that a dry gas control test be automatically performed before and after every subject test and instrument certification. Subpart B's requirement is specific as to the Intoxilyzer model 8000 OH-5 at issue herein. Once again, however, Appellant does not contend that the dry gas control test was not performed in a timely manner, or that it was not performed properly, only that the trooper did not distinguish the Intoxilyzer 8000 model as being an "OH-2" or "OH-5."

{¶22} We begin our discussion by noting that the decision to admit or exclude evidence rests within the sound discretion of the trial court. *State v. Moss,* 4th Dist. No. 95CA2089, 1996 WL 130982, (Mar. 15, 1996), citing *State v. Combs,* 62 Ohio St. 3d 278, 581 N.E.2d 1071 (1991); *State v. Sage,* 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Id,* citing *State v. Xie,* 62 Ohio St.3d 521, 584 N.E.2d 715 (1992); *State v. Montgomery,* 61 Ohio St.3d 410, 575 N.E.2d 167 (1991). When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. See *In re Jane Doe,* 57 Ohio

St.3d 135, 566 N.E.2d 1181 (1991), citing *Berk v. Matthews,* 53 Ohio St.3d

161, 559 N.E.2d 1301 (1990).  We further note "the   Rules of Evidence do

not apply to suppression hearings." *State v. Ulmer,* 4th Dist. No.

09CA3283, 2010-Ohio-695, 2010 WL 686256, ¶10, quoting *State v. Bozcar,*

113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, at¶17, citing Evid.R.

101(C)(1) & 104(A). Therefore, "'[a]t a suppression hearing, the court may

rely on ***evidence, even though that evidence would not be admissible at

trial.'" *Maumee v. Weisner,* 87 Ohio St.3d 295, 298, 1999-Ohio-68, 720

N.E.2d 507, quoting *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406

(1980).

{¶23} During the suppression hearing, the State produced evidence

that Appellant was observed for 20 minutes prior to taking the breath test.

Trooper Haislop testified he scanned his certified operator's card into the

Intoxilyzer 8000 machine located in the Ross County Law Enforcement

Complex.  The trooper followed all prompts and commands he was given

electronically.  Trooper Haislop also identified the serial number of the

instrument he used 80-004169, and testified the machine was certified.  The

trooper testified that everything was working correctly on the machine and it

produced a clean result. Of chief importance is the trooper's testimony that

the machine would have rejected Appellant's test and the entire process

would have had to be restarted from the beginning, had the machine not been working properly.   From his testimony and the documents offered into evidence, the trial court found that the breath test was admissible. We agree.

{¶24} The Supreme Court of Ohio has held that certified copies of police logs showing calibration of intoxilyzer equipment were admissible, despite absence of calibrating officer at trial. *State v. Ward,* 15 Ohio St. 3d 355, 474 N.E.2d 300 (1984).  Exclusion of observations by police officers from hearsay exception for business reports prohibits its introduction of reports which recite officer's observations of criminal activities or observations made as part of investigation of criminal activities. *Id.* at 357, 474 N.E.2d 300.  Rules of Evid. Rule 803(8). Introduction of records of routine, intrapolice, or machine maintenance nature, such as intoxilyzer calibration logs is not prohibited as hearsay.  *Ward, supra,* at 357, 474 N.E.2d 300.  Evid.R.803(8). Regarding the calibration testimony, the trial court held as follows:

> "[T]he court notes that the documents submitted by the State show various certifications.  There is the same serial number on the machine. ***Yes, as the certificates of calibration on the second page of the Defendant's Exhibit 1….The lot number of the solution is verified.  The certification of analysis on the last page of Defendant's Exhibit 3 shows it passed their standards.  Page 5 is instrument certification and shows it was certified within a year of the test, has the serial number and the dry gas lot number, which is the same as shown on the test case, Exhibit A, so the Court finds Defendant's Exhibit A admissible, and finds the test admissible, the results admissible."

**{¶25}** Trooper Haislop testified the machine was functioning properly or it would have rejected the test and the entire process would have had to have been restarted. The documentary evidence stipulated by counsel and admitted into evidence supports the fact that the Intoxilyzer 8000 machine used to perform Appellant's breath test was properly identified by serial number and properly calibrated.

**{¶26}** Based upon the evidence before us in the record, we find that Appellant failed to produce evidence demonstrating a lack of proper foundation for admission of the breath test results simply because the trooper failed to explicitly distinguish in his testimony that the particular Intoxilyzer 8000 model used on the night in question was an OH-5 or an OH-2. The documentary evidence admitted cured any deficiency in the trooper's testimony. As such, we conclude find that the trial court did not err by overruling Appellant's motion to suppress the breath test results. Accordingly, Appellant's second assignment of error is overruled. The decision of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Harsha, J. & Kline, J:  Concur in Judgment and Opinion.

For the Court,

BY:  _____
      Matthew W. McFarland
      Presiding Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**