[Cite as *State v. Payne*, 2012-Ohio-4696.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 11CA3272 |
| | : | |
| vs. | : | **Released: September 25, 2012** |
| | : | |
| RODNEY W. PAYNE, II, | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| Defendant-Appellant. | : | |

_____
APPEARANCES:

Stephen K. Sesser, Chillicothe, Ohio, for Appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, Chillicothe, Ohio, for Appellee.

_____

McFarland, J.:

{¶1} Appellant, Rodney W. Payne, II, appeals his conviction in the Ross County Court of Common Pleas after he pled no contest to one count of possession of cocaine. Appellant's appellate counsel has advised this Court that, after reviewing the record, he cannot find a meritorious claim for appeal. As a result, Appellant's counsel has moved to withdraw under *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396 (1967). We find no merit to the sole assignment of error and further, after independently reviewing the record, find no additional error prejudicial to the Appellant's rights in the

trial court proceedings.  The motion of counsel for Appellant requesting to withdraw as counsel is granted, and this appeal is dismissed for the reason that it is wholly frivolous.

## FACTS

{¶2} On January 21, 2011, Appellant was indicted on one count of possession of cocaine, a violation of R.C. 2925.11, a felony of the second degree.  On February 24, 2011, Appellant filed a motion to suppress evidence allegedly obtained pursuant to unlawful stop and detention. The motion to suppress came on for hearing on March 16, 2011.

{¶3} At the suppression hearing, the only witness was Trooper Michael Wilson on behalf of the State of Ohio. Trooper Wilson testified that he was trained at the Ohio State Highway Patrol Academy and has been employed as a road trooper with the Ohio State Highway Patrol since 2004. At the Academy, he successfully completed a technical crash investigator program.

{¶4} On June 4, 2010, he initially observed Appellant on eastbound U.S. 35 in Ross County, Ohio, near the State Route 50 "split." Appellant was driving a Chevrolet HHR (body style similar to a PT Cruiser), a four-door vehicle with a rear hatch and dark tinted windows.  Trooper Wilson recalled the road was dry and traffic was light to moderate.  Appellant was in

the right hand lane on U.S. 35 traveling three-lengths behind another vehicle, at 56 miles per hour.  Trooper Wilson determined the speed of Appellant's vehicle by activating the front radar unit which demonstrated the trooper's vehicle was 56 miles per hour as he paced Appellant's vehicle. He further testified he was trained as to the formula[1] for calculating a "following too close" violation, but the general rule of thumb was "one car length for every ten miles an hour."  Based on his training and experience, he opined that under these conditions, traveling 56 miles per hour at three car lengths between vehicles, it would be "pretty hard" to avoid a collision by simply applying the brakes if the lead vehicle stopped.

{¶5} Trooper Wilson further testified that as Appellant and he approached the Route 50 split from U.S. 35, there was a roll-back tow truck on the right edge berm with a vehicle being loaded onto the tow truck.   The driver was standing outside of the truck, next to the white fog line.  The yellow flashing strobe lights on top of the truck were activated.   And, the trooper noted Appellant failed to slow down or move over to avoid the tow truck.  Appellant continued to maintain the right lane.  The trooper also testified there were no other vehicles in the way which would have

---

[1] He testified to the formula for calculating a "following too close" violation as such: " [it] is feet per second travel due to the vehicle speed of say fifty-six miles per hour, the distance from the second vehicle to the lead vehicle and there's a math equation that equates to how many feet per second to traveling."

prevented Appellant from changing lanes upon seeing the tow truck and driver.

{¶6} After observing the two violations, Trooper Wilson decided to stop the vehicle.  He called in the license plate to the dispatch and was advised that the vehicle was a rental.   Once he found a safer location, he activated his lights and Appellant moved his vehicle to the right berm. Trooper Wilson testified that his vehicle was equipped with a camera system which was working correctly on the date of Appellant's stop.  However, the violations were not captured on video.

{¶7} Trooper Wilson also testified when he approached the passenger side, Appellant identified himself and asked why he had been stopped. Appellant handed the trooper an overdue Enterprise rental agreement. He further testified Appellant was nervous, speaking fast, and overly talkative. Appellant explained he earlier departed from Columbus, Ohio and was on his way to Huntington, West Virginia to see his sick grandmother.  He also indicated his own vehicle was "in the shop." At this point, Trooper Wilson radioed for Trooper Mikesh to come to the scene.  Trooper Wilson testified he radioed for Trooper Mikesh 40-45 seconds after the stop occurred.

{¶8} Trooper Wilson requested Appellant exit the vehicle because he knew Trooper Mikesh was on her way to do a canine search.   Appellant

asked the trooper to turn off the ignition. While doing so, Trooper Wilson saw debris of green leafy substance which he believed to be marijuana in the center console. Trooper Wilson then Mirandized Appellant. He advised Appellant the vehicle was going to be searched and requested and performed a pat-down search. Trooper Wilson and Trooper Mikesh searched the vehicle. Trooper Mikesh conducted a dog sniff and informed Trooper Wilson that the canine alerted on the left side of the vehicle. Trooper Wilson searched that area a few minutes, opened the rear hatch, and located a suitcase which contained men's shoes and white bags of powder appearing to be cocaine.

{¶9} Trooper Wilson testified it took him 45 minutes to investigate the discrepancy in the rental agreement. He summarized the indicators of criminal activity he observed as (1) the overdue rental car, (2) the violation of "following too closely," (3) Appellant's nervousness, and (4) the trip from Columbus to Huntington. Trooper Wilson suspected drug activity.

{¶10} The trial court denied the motion to suppress on the record on the suppression hearing date.[2] On April 5, 2011, the court accepted Appellant's plea of no contest. On August 8, 2011, the court's judgment entry of sentence was journalized.

---

[2] The Ross County Common Pleas docket sheet does not reflect that any entry denying the motion to suppress was filed in this matter.

{¶11} This appeal is timely filed.  We have allowed Appellant sufficient time to respond to counsel's brief.   To date, no response has been received.

ANDERS BRIEF

{¶12} Under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967), counsel may ask permission to withdraw from a case when counsel has conscientiously examined the record, can discern no meritorious claims for appeal, and has determined the case to be wholly frivolous. *Id.* at 744; *State v. Adkins,* 4th Dist. No. 03CA27, 2004-Ohio-3627, ¶8.  Counsel's request to withdraw must be accompanied with a brief identifying anything in the record that could arguably support the client's appeal.  *Anders* at 744; *Adkins* at ¶8.  Further, counsel must provide the defendant with a copy of the brief and allow sufficient time for the defendant to raise any other issues, if the defendant chooses to.  *Id.*

{¶13} Once counsel has satisfied these requirements, the appellate court must conduct a full examination of the trial court proceedings to determine if meritorious issues exist.  If the appellate court determines that the appeal is frivolous, it may grant counsel's request to withdraw and address the merits of the case without affording the appellant the assistance of counsel. *Id.*  If, however, the court finds the existence of meritorious

issues, it must afford the appellant assistance of counsel before deciding the merits of the case.  *Anders* at 744; *State v. Duran,* 4th Dist. No. 06CA2919, 2007-Ohio-2743, ¶7.

{¶14} In the current action, Appellant's counsel advises that the appeal is wholly frivolous and has asked permission to withdraw.  Pursuant to *Anders,* counsel has filed a brief raising one potential assignment of error for this Court's review.

POTENTIAL ASSIGNMENT OF ERROR

I.      THE TRIAL COURT ERRED WHEN IT DENIED PAYNE'S
        MOTION TO SUPPRESS.

LEGAL ANALYSIS

{¶15} In his sole assignment of error, Appellant contends that the trial court erred when the motion to suppress was overruled.   Our review of a decision on a motion to suppress "presents mixed question of law and fact." *State v. McNamara*, 124 Ohio App.3d 706, 710, 707 N.E.2d 539 (4th Dist.1997) citing *United States v. Martinez* (C.A. 11, 1992), 949 F.2d 1117, 1119.  At a suppression hearing, the trial court is in the best position to evaluate witness credibility.  *State v. Dunlap*, 73 Ohio St.3d 308, 314, 652 N.E.2d 988 (1995). Accordingly, we must uphold the trial court's findings of fact if competent, credible evidence in the record supports them.  *Id.*  We

then conduct a de novo review of the trial court's application of the law to the facts. *State v. Anderson*, 100 Ohio App.3d 688, 691, 654 N.E.2d 1034 (4th Dist.1995); *State v. Fields*, 4th Dist. No. 99CA11, WL1125250 (Nov. 29, 1999).

{¶16} Specifically, Appellant contends that there are issues as to (1) whether or not Trooper Wilson had probable cause to initiate a traffic stop of the vehicle Payne was driving, and (2) whether or not Trooper Wilson exceeded the scope of the stop when he did not allow Payne to leave after issuing the ticket for violations of R.C. 4511.34 and R.C. 4511.213. For the reasons which follow, we disagree. We therefore affirm the trial court's ruling on Appellant's motion to suppress.

{¶17} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide for "[t]he right of the people to be secure***against unreasonable searches and seizures***." Searches and seizures conducted without a prior finding of probable cause by a judge or magistrate "are per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions." *California v. Acevedo*, 500 U.S. 565, 111 S.Ct., 1982 (1991); *State v. Tincher*, 47 Ohio App.3d 188, 548 N.E.2d 251 (1988). If the government obtains evidence through actions that violate an accused's

Fourth Amendment rights, that evidence must be excluded at trial. *State v. Lemaster,* 4th Dist. No. 11CA3236, 2012-Ohio-971, 2012 WL 762542,¶8.

{¶18} The Supreme Court of Ohio has stated that "[p]robable cause is certainly a complete justification for a traffic stop," but the court has 'not held that probable cause is required.'" *State v. Ward,* 4th Dist. No. 10CA30, 2011-Ohio-1261, 2011 WL 917854, at ¶13, quoting *State v. Mays,* 119 Ohio St. 3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, at ¶23.  Instead, to justify a traffic stop based upon less than probable cause, an officer must be able to articulate specific facts that would warrant a person of reasonable caution to believe that the person has committed, or is committing, a crime, including a minor traffic violation.  See *Terry v. Ohio*, 392 U.S. 1, 21, 88. S.Ct. 1868 (1968).  See, also, *Mays* at ¶8.  *Chillicothe v. Frey,* 156 Ohio App.3d 296, 2004-Ohio-927, 805 N.E.2d 551 at ¶14; *State v. Garrett,* 4th Dist. App. No. 05CA802, 2005-Ohio-5155, 2005 WL 2389635, ¶10.  Reasonable suspicion sufficient to conduct a stop exists if there is "at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673 (2008).  As we explained in *State v. Emerick,* 4th Dist. No. 06CA45, 2007-Ohio-4398, 2007 WL 2410892, at ¶15:

> "A traffic stop may pass constitutional muster even where the state cannot convict the driver due to a failure in meeting the burden of proof or a technical difficulty in enforcing the underlying statute or ordinance.***The very

purpose of an investigative stop is to determine whether criminal activity is afoot. This does not require scientific certainty of a violation nor does it invalidate a stop on the basis that the subsequent investigation reveals no illegal activity is present."

{¶19} A court that must determine whether a law enforcement officer possessed a reasonable suspicion or probable cause to stop a vehicle must examine the "totality of the circumstances." *Id.*, at ¶13. See, e.g., *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct.744 (2002). Moreover, the touchstone of a Fourth Amendment analysis is the reasonableness of the intrusion. *Emrick,* ¶13. See, e.g., *State v. Dunfee*, 4th Dist. No. 02CA37, 2003-Ohio-5970, 2003 WL 2253819, ¶ 25, citing *Pennsylvania v. Mimms*, 434 U.S. 106, 108-109, 98 S.Ct. 330, (1997).

{¶20} A police officer may stop the driver of a vehicle after observing a de minimis violation of traffic laws. *State v. Guseman*, 4th Dist. No. 08CA14, 2009-Ohio-952, 2009 WL 537198, at ¶20, citing, *State v. Bowie,* 4th Dist. No. 01CA34, 2002-Ohio-3553, 2002 WL 1565710, at ¶8, 12, and 16, citing *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769 (1996). See, also, *Dayton v. Erickson*, 76 Ohio St.3d 3, 655 N.E.2d 1091 (1996), syllabus.

{¶21} In the case sub judice, we agree with the trial court's apparent conclusion that Trooper Wilson had reasonable articulable suspicion to stop

the vehicle in question for violations of both R.C. 4511.34 and R.C. 4511.213. Regarding the court's ruling on R.C. 4511.34, the transcript of the suppression hearing reveals counsel for the State argued:

> "This is an easy case. I know the court has some questions about the following too close; I believe the case law will bury(sic) out number one that the statute is constitutional that has been challenged and dealt with and any, any cursory review of the case law will bare (sic)that out. As far as the rule of thumb, I know the court has an issue for the definition of car length, but again, including the fourth district, virtually every district in this case has discussed that as a rule of thumb, they do not have any issues with it, they take and apply it in those situations, including situations in which a vehicle is traveling the posted speed limit but still following too close. So either way, you're looking at a violation there. As far as the ability to get over, you can see in the video that the trooper is far enough back from the defendant that he has got plenty of room to move over if he so chose without-

{¶22} To which the court responded: "I'm not even- like I say, I'm not even worried about that-." The trial court further stated: "I find he had a reasonable basis to determine that there was a violation of 4511.213." Finally, the trial court stated that the motion to suppress was overruled. Generally, an appellate court will presume that a trial court overruled a motion on which it did not expressly rule, where it is clear that that is what the trial court actually intended to do. *State v. Lewis,* 164 Ohio App.3d 318, 2005-Ohio-5921, (10th Dist. 2005),¶9. See *Newman v. Al Castrucci Ford Sales, Inc.* 54 Ohio App.3d 166, 561 N.E.2d 1001, (1988), ¶4. See also, *In*

*re Sites,* 4th Dist. No. 05CA39, 2006- Ohio- 3787, 2006 WL 2045814, fn. 6, (Motions not expressly ruled on are deemed impliedly overruled.) The trial court overruled the motion explicitly with regard to the "emergency vehicle" statute, R.C. 4511.213 and the motion in full at the end of the transcript. We presume therefore that the trial court, although not explicitly stated, intended to overrule the motion with regard to the "following too closely" statute as well. We agree with the trial court's ruling that Trooper Wilson acted on the bases of reasonable articulable suspicion with regard to both traffic citations.

*A. Following too closely*

R.C. 4511.34, space between moving vehicles, states in pertinent part:

"The operator of a motor vehicle, streetcar, or trackless trolley
shall not follow another vehicle, streetcar, or trackless trolley
more closely than is reasonable and prudent, having due regard
for the speed of such vehicle, streetcar, or trackless trolley, and
the traffic upon and the condition of the highway."

{¶23} In *Ward,* above at ¶15, we noted that "[a]n officer's direct observation that a vehicle is following another vehicle too closely provides probable cause to initiate a lawful traffic stop." See also *State v. Kelly,* 188 Ohio App.3d 842, 2010-Ohio-3560, 937 N.E.2d 149, at ¶ 15, citing S*tate v. Perry*, 12th Dist. No. CA2004-11-016, 2005-Ohio-6041, 2005 WL 3031741, at ¶12.

{¶24} Here, Trooper Wilson testified that he observed Appellant in the right-hand lane of U.S. 35, traveling approximately three car lengths behind another vehicle at a rate of 56 miles per hour. He alluded to his formal training for calculating a "following too close" violation and testified that he relied on the "rule of thumb" regarding "one car length for every ten miles per hour." Trooper Wilson also testified as to his opinion that it would be difficult to avoid a collision under the conditions Appellant was traveling. Finally, Trooper Wilson testified as to his training at the highway patrol academy and his experience as a road trooper since 2004. Admittedly, this violation was not captured on Trooper Wilson's in car camera system. Counsel argues that under the conditions of dry weather and light to moderate traffic, Appellant's "following too close" did not pose a threat of crash or other danger. However, Appellant presented no evidence to contradict Trooper Wilson's direct observations. Based on Trooper Wilson's testimony as to the totality of the circumstances, we agree that the trial court correctly found a reasonable articulable basis for Trooper Wilson to stop Appellant for following too closely.

*B. Public safety vehicles*

{¶25} Appellant further argues there was no probable cause to stop his vehicle for violation of R.C. 4511.213, approaching stationary public safety vehicle displaying emergency light, which states in pertinent part:

> (A) The driver of a motor vehicle, upon approaching a public safety vehicle, an emergency vehicle, or a road service vehicle that is displaying the appropriate visual signals by means of flashing, oscillating, or rotating lights, as prescribed in section 4513.17 of the Revised code, shall do either of the following:
>
> (1) If the driver of the motor vehicle is traveling on a highway that consists of at least two lanes that carry traffic in the same direction of travel as that of the driver's motor vehicle the driver shall proceed with due caution and, if possible and with due regard to the road, weather, and safety conditions, shall change lanes into a lane that is not adjacent to that of the stationary public safety vehicle, an emergency vehicle, or a road service vehicle.

Again, in examining the totality of the circumstances, we agree with the trial court that Trooper Wilson had a reasonable basis for stopping Appellant's vehicle for this traffic violation. The only evidence in this matter is the officer's testimony, which demonstrated a reasonable articulable suspicion that Appellant committed a traffic violation. Regarding the R.C. 4511.213 violation, Trooper Wilson testified that as he followed Appellant on U.S. 35, approaching the Route 50 split, he observed a tow truck to the right edge berm, loading a vehicle. The driver was standing outside of the truck and the yellow lights on the

truck were activated. Trooper Wilson testified that Appellant failed to slow down or change lanes to avoid the truck when there were no other vehicles which would have prevented him from doing so. Again, this violation was not recorded on the trooper's in car camera system.

{¶26} Counsel now argues that Appellant possibly did not see the tow truck. However, Appellant failed to elicit any testimony on his behalf, as to this issue or any other, at the suppression hearing. The trial court was free to consider Trooper Wilson's credibility and apparently found his testimony believable. The trial court was in the best position to evaluate this evidence. See, e.g., *State v. Dunlap,* above. Based on the totality of the circumstances, we agree with the trial court's ruling as to the violation of R.C. 4511.213.

*C. Length of Detention*

{¶27} Counsel argues that the length of detention of Appellant was unreasonable and that the minor traffic violations unlawfully expanded to a full-blown search for drugs. The scope and duration of a routine traffic stop "must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319 (1983); see, also, *State v. Gonyou*,

108 Ohio App.3d 369, 372, 670 N.E.2d 1040 (6th Dist.1995) and *State v. Hughes,* 4th Dist. No. 97CA2309, 1998 WL 363850. The rule set forth in *Royer* is designed to prevent law enforcement officers from conducting "fishing expeditions" for evidence of a crime. See generally, *Gonyou; Sagamore Hills v. Eller*, 9th Dist. No. 18495, 1997 WL 760693; see, also, *Fairborn v. Orrick,* 49 Ohio App.3d 94, 95, 550 N.E.2d 488, 490 (2nd Dist.1988), (stating that "the mere fact that a police officer has an articulable and reasonable suspicion sufficient to stop a motor vehicle does not give that police officer 'open season' to investigate matters not reasonably within the scope of his suspicion").

{¶28} "When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration, and vehicle plates." *State v. Aguirre,* 4th Dist. No. 03CA5, 2003-Ohio-4909, 2003 WL 22136234, at ¶ 36, citing *State v. Carlson,* 102 Ohio App.3d 585, 598, 647 N.E.2d 591(9th Dist.1995). "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." *Id.*, citing *State v. Cook,*

65 Ohio St.3d 516, 521-522, 605 N.E.2d 70 (1992), (fifteen minute detention was reasonable); *United States v. Sharp*, 470 U.S. 675, 105 S. Ct. 1568 (1985), (twenty minute detention was reasonable).

{¶29} A lawfully detained vehicle may be subjected to a canine check of the vehicle's exterior even without the presence of a reasonable suspicion of drug-related activity. *State v. Rusnak*, 120 Ohio App.3d 24, 28, 696 N.E.2d 633 (6th Dist.1997). Both Ohio courts and the United States Supreme Court have determined that "the exterior sniff by a trained narcotics dog to detect the odor of drugs is not a search within the meaning of the Fourth Amendment to the Constitution." *State v. Jones,* 4th Dist. No. 03CA61, 2004 WL 3090198, ¶24*; United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637 (1983). Thus, a canine check of a vehicle may be conducted during the time period necessary to effectuate the original purpose of the stop. *Jones,* at ¶24.

{¶30} In this matter, Trooper Wilson testified that because he had observed the two traffic violations, he decided to stop Appellant's vehicle. In doing so, he called in the license plate to dispatch and discovered the vehicle was a rental.  Upon his approach to Appellant's passenger side, Appellant identified himself and immediately handed Trooper Wilson the

overdue rental agreement. Trooper Wilson testified it took him about 45 minutes to resolve the rental agreement issue.

{¶31} Trooper Wilson also testified that he believed there were several indicators of criminal activity present, namely: (1) the overdue rental car, (2) the "following too close" violation, (3) Appellant's nervous behavior, and (4) Appellant's point of origination  being Columbus, Ohio and his ultimate destination being Huntington, West Virginia.  Appellant surrendered the rental agreement without being asked and volunteered the information about his trip.  All this was within a few seconds of Trooper Wilson's approach to the passenger side.  Trooper Wilson testified that he radioed for the other trooper to come to the scene with the canine unit within 40-45 seconds after the stop occurred.

{¶32} Here, the record demonstrates that Trooper Wilson diligently conducted his investigation of the rental agreement, which took 45 minutes. He requested the canine unit to assist shortly after the stop occurred, and the canine check took place within this  same 45-minute span of time. Therefore, we conclude that Trooper Wilson did not unlawfully expand the scope of the stop, and the detention of the vehicle was reasonable.

{¶33} Having conducted a de novo review, we conclude that the State demonstrated reasonable bases for stopping Appellant's vehicle for

violations of R.C. 4511.34 and R.C. 4511.213, and further, that the length and scope of Appellant's detention was reasonable.  The trial court's findings are supported by the record. As such, we also conclude that the potential assignment of error advanced by appellate counsel is wholly without merit. The motion of counsel for Appellant requesting to withdraw as counsel is granted.  This appeal is dismissed for the reason that it is wholly frivolous.

**APPEAL DISMISSED**

Harsha, J., dissenting:

{¶34} Because I conclude there is arguable merit to the issue of whether the trooper exceeded the lawful scope of the traffic stop, I would assign new counsel and decide the merits of that issue.

## **JUDGMENT ENTRY**

It is ordered that the APPEAL BE DISMISSED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, P. J: Concurs in Judgment and Opinion.
Harsha, J: Dissents with Dissenting Opinion.

For the Court,

BY: _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**