[Cite as *State v. Cremeans*, 2022-Ohio-3932.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO                          :
                                       :
        Plaintiff-Appellee,            :       Case No. 21CA3741
                                       :
v.                                     :
                                       :       DECISION AND
JAMES D. CREMEANS,                     :       JUDGMENT ENTRY
                                       :
        Defendant-Appellant.           :
_____

APPEARANCES:

James T. Boulger, Chillicothe, Ohio, for Appellant.

Jeffrey C. Marks, Ross County Prosecuting Attorney, and Pamela C. Wells,
Assistant Ross County Prosecuting Attorney, Chillicothe, Ohio, for Appellee.
_____

Smith, P.J.

{¶1} Appellant, James Cremeans, appeals the judgment entered by the Ross

County Court of Common Pleas convicting him of one count of aggravated

possession of drugs, a third-degree felony in violation of R.C. 2925.11.  Cremeans

pled no contest to the charge after the trial court denied his motion to suppress

evidence.  On appeal, Cremeans raises three assignments of error contending 1)

that the trial court erred to his prejudice in finding there was reasonable suspicion

and probable cause to believe that he had committed a traffic violation rendering

the traffic stop and his subsequent detention lawful; 2) that the trial court erred to

his prejudice in finding that an objectively reasonable officer would have believed he committed a violation of R.C. 4511.39; and 3) that the trial court abused its discretion in denying his request to supplement the record. For the reasons that follow, we find no merit to the assignments of error raised by Cremeans. Accordingly, the judgment of the trial court is affirmed.

FACTS

{¶2} On December 6, 2019, Cremeans was indicted on one count of aggravated possession of drugs, a third-degree felony in violation of R.C. 2925.11. The indictment stemmed from Cremeans' arrest as a result of a traffic stop. The record before us indicates that Chillicothe Police Detective, Samantha Taczak, observed Cremeans' vehicle turn right at a stop sign at the intersection of Trego Creek Road and Lunbeck Road without using a turn signal. Cremeans was traveling eastbound on Trego Creek Road and heading towards U.S. Route 23. Detective Taczak radioed Ohio State Highway Patrol Trooper, Thomas Cassidy, who was sitting stationary in his cruiser near the intersection of Trego Creek Road and U.S. Route 23 and asked him to initiate a stop of Cremeans' vehicle because she had observed a turn signal violation at the intersection. Trooper Cassidy, who was working in partnership with the Chillicothe Police Department on a joint drug interdiction detail, followed Cremeans onto U.S. Route 23 and initiated a traffic

stop. Trooper Matthew Atwood, a K-9 handler for the Ohio State Highway Patrol, was also present with his vehicle and assisted Trooper Cassidy.

{¶3} Because the arguments on appeal are limited to whether there was reasonable suspicion and probable cause to believe that Cremeans had committed a traffic violation, we simply note that the initial stop led to a request that Cremeans exit the vehicle, a K-9 sniff of the vehicle, an investigative detention after the K-9 alerted on the vehicle, a search of the vehicle, the discovery of what was later confirmed to be oxycodone hydrochloride in an amount equal to or exceeding the bulk amount but less than five times the bulk amount, and Cremeans' arrest. Upon being indicted on the single count, Cremeans initially pleaded not guilty and subsequently filed a motion for leave to file a motion to suppress evidence.

{¶4} The trial court granted the motion for leave and Cremeans filed a motion to suppress the same day, on June 17, 2020. In his motion, Cremeans argued that because he was continuing onto Trego Creek Road from Trego Creek Road after stopping at the stop sign at the three-way intersection of Trego Creek Road and Lunbeck Road, he was not required to signal a turn. Cremeans further argued that he "neither turned nor moved left or right upon a highway when he traveled through the intersection in the right-of-way of Trego Creek Road without changing or leaving his lane of travel[,]" and therefore that he did not violate R.C. 4511.39.

{¶5} The suppression hearing was continued twice but finally went forward on December 2, 2020. Detective Taczak was unable to appear due to being quarantined, however, Troopers Cassidy and Atwood testified at the hearing. Cremeans presented no witnesses, but offered two exhibits jointly with the State and stipulated that the two exhibits accurately depicted the intersection of Trego Creek Road and Lunbeck Road. Trooper Cassidy testified that from looking at the map, which was one of the joint exhibits, it appeared as though Lunbeck Road would continue straight onto eastbound Trego Creek Road at the intersection in question. He further testified that if a driver was sitting at the stop sign on Trego Creek Road heading east, as Cremeans was, he did not believe one could travel straight to continue on to Trego Creek Road, but rather a driver would actually have to make a 90 degree turn to continue on Trego Creek Road after stopping at the stop sign. He testified that he believed Officer Taczak had relayed a valid turn signal violation to him based on Cremeans' change of direction at the intersection. On cross examination, Trooper Cassidy disagreed with defense counsel's suggestion that the turn at issue was only a curve and he testified that in his view Cremeans had a stop sign and had to make a 90 degree turn "to get back on Trego."

{¶6} The trial court issued a ruling from the bench denying Cremeans' motion to suppress which was followed by a written decision denying the motion on December 11, 2020.  In its written decision, the trial court found as follows:

> Defendant contends that although Trego Creek Road changes direction to the right, he had no obligation to use a turn signal pursuant to O.R.C. § 4511.39, because he neither turned, nor moved right or left on a roadway.  Rather, Defendant argues that he simply continued on Trego Creek Road.  This Court disagrees.
>
> The change of direction made by Defendant is not analogous to following a continuous curve in a roadway.  This was an intersection.  Regardless of whether the turn made by Defendant was a traditional 90-degree turn[], or something else, the facts establish that he was turning.  * * * Whether the name of the roadway upon which he choses to proceed changed in inconsequential.[1]

{¶7} Thereafter, on December 16, 2020, Cremeans filed a motion for leave to supplement the record with "additional data embedded in Google Maps, the data base which is the source of the two stipulated exhibits * * *."  In the memorandum filed in support of the motion for leave, Cremeans' counsel represented that on the afternoon of December 2, 2020, after the suppression hearing had concluded, he traveled to the intersection at issue and photographed signs appearing from the western approach to the intersection.  The first sign provided notice of the approach to a stop sign and the second sign was described in the memorandum as a

---

[1]The internal footnote was omitted as denoted by brackets herein but stated that Trooper Cassidy described the turn as a 90 degree turn south and that the maps in evidence demonstrated that after the initial turn, the roadway immediately curves back towards the east.

"horizontal alignment sign" that provided notice of a "reverse turn" on Trego

Creek as the road proceeds through the intersection.  The memorandum stated that

Cremeans had asked the State to agree to a supplementation of the record on

December 4, 2020, but the State had refused and questioned whether the sign was

in place at the time of the incident on October 10, 2019.  Cremeans further stated

in his memorandum that "Counsel awaits a response from the Ross County

engineer on this question."

{¶8} The State filed a memo contra to the motion for leave to supplement

the record on January 11, 2021, arguing that the proposed additional exhibits were

irrelevant to the legal questions at issue and may serve to confuse the issues or

result in the need for additional future arguments of issues not raised in the motion

to suppress.  The State also argued that there was no evidence presented that the

signs depicted in the proposed additional exhibits were actually present on the date

in question.  The trial court ultimately denied Cremeans' motion on January 15,

2021, stating it had "considered the motion; the Memo Contra filed by the State of

Ohio; and the record * * *."  Thereafter, Cremeans filed his timely appeal to this

Court, assigning three errors for our review.

{¶9} Cremeans attached three exhibits to his appellate brief.  Two of the

exhibits were the ones he sought to supplement the record with below and there

was one additional exhibit related to a case cited in support of his arguments on

appeal.  None of these exhibits were before the trial court during the suppression hearing nor were they permitted to be supplemented to the record below.  Thus, the State filed a motion to strike Cremeans' appellate brief Appendices A, B, and C from the record and filed a memorandum in support.

{¶10} Thereafter, Cremeans filed a "Request to Take Judicial Notice in Response to Motion to Strike."  He attached four exhibits to this request.  Two of the exhibits were the exhibits attached in support of his motion to supplement the record filed below and the other two exhibits were completely new.  The two new exhibits appear to depict yet another street view and another aerial view of the intersection at issue.  Once again, the State opposed the request to take judicial notice as evidenced by its filing of a Memorandum Contra to Request to Take Judicial Notice in Response to Motion to Strike Filed by Appellant 10/18/2021. The State argued the proposed exhibits were "neither part of the trial court record, nor should they be considered by this Court."  In response, Cremeans filed a Reply to Memorandum Contra Request to Take Judicial Notice.  Finally, on November 9, 2021, this Court filed an administrative entry striking Appendices A, B, and C from Cremeans' appellate brief and denying Cremeans' request to take judicial notice.  The matter is now before us for final consideration and determination.

ASSIGNMENTS OF ERROR

I.      THE TRIAL COURT ERRED TO THE PREJUDICE
        THE [SIC] DEFENDANT IN FINDING THERE WAS

REASONABLE SUSPICION AND PROBABLE CAUSE TO BELIEVE THAT HE HAD COMMITTED A TRAFFIC VIOLATION RENDERING THE TRAFFIC STOP AND HIS SUBSEQUENT DETENTION UNLAWFUL FOR PURPOSES OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

II.     THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT IN FINDING THAT AN OBJECTIVELY REASONABLE OFFICER WOULD HAVE BELIEVED THE DEFENDANT COMMITTED A VIOLATION OF ORC 4511.39, THE PURPORTED VIOLATION BEING THE SOLE BASIS FOR THE STOP AND DETENTION OF THE DEFENDANT.

III.    THE TRIAL COURT, HAVING CLAIMED PERSONAL KNOWLEDGE OF AN INTERSECTION AND TAKEN JUDICIAL NOTICE OF STIPULATED EXHIBITS DEPICTING THE PHYSICAL CHARACTERISTICS OF IT, COMMITTED AN ABUSE OF DISCRETION IN DENYING THE DEFENDANT'S REQUEST TO SUPPLEMENT THE RECORD WITH ADDITIONAL DATA FROM THE SAME DATABASE WHICH WAS A SOURCE OF THE EXHIBITS. THE REQUESTED SUPPLMENTATION CONSISTED OF THE DEPICTION OF A TRAFFIC CONTROL SIGN RELEVANT TO THE ISSUE OF WHETHER A DRIVER, PASSING THE SIGN ON AN APPROACH TO THE INTERSECTION, WAS REQUIRED TO USE A TURN SIGNAL PURSUANT TO THE PROVISIONS OF R.C. 4511.39 BEFORE CONTINUING HIS ROUTE OF TRAVEL THROUGH THE INTERSECTION. THE TRIAL COURT'S ERROR IN THIS REGARD WAS PREJUDICIAL TO THE DEFENDANT.

## ASSIGNMENT OF ERROR III

{¶11} For ease of analysis, we address Cremeans' assignments of error out of order. In his third assignment of error, Cremeans contends that the trial court abused its discretion in denying his request to supplement the record with additional exhibits depicting a traffic control sign which Cremeans contends is relevant to the issue of whether he was required to use his turn signal on an approach to the intersection in question. The State responds by arguing that Cremeans had ample time to present the evidence he wished the trial court to consider and further argues that Cremeans' motion to supplement the record did not argue "that the purported supplement to the record fairly and accurately depicted the intersection in question[,]" but instead "the motion stated that the county engineer had to be consulted further." The State argues that Cremeans' post-hearing and post-decision motion to supplement the record essentially requested "a second bite at the apple, without allowing further testimony or explanation by the State."

### Standard of Review

{¶12} " '[T]he admission or exclusion of evidence is within the sound discretion of the trial court, and the trial court's decision to admit or exclude such evidence cannot be reversed absent an abuse of discretion.' " *State v. Kister*, 4th Dist. Athens Nos. 18CA10, 18CA11, 18CA12, 2019-Ohio-3583, ¶ 46, quoting

*State v. Rudolph*, 4th Dist. Lawrence No. 17CA12, 2019-Ohio-468, ¶ 42, in turn

citing *State v. Craft*, 4th Dist. Athens No. 97CA53, 1998 WL 255442, *7. "An

abuse of discretion is more than an error, it means that the trial court acted in an

'unreasonable, arbitrary, or unconscionable' manner." *Kister* at ¶ 46, quoting *State*

*v. Reed*, 110 Ohio App.3d 749, 752, 675 N.E.3d 77 (4th Dist. 1996), in turn citing

*State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). "When applying

the abuse of discretion standard, a reviewing court is not free merely to substitute

its judgment for that of the trial court." *Reed* at 752, citing *In re Jane Doe 1*, 57

Ohio St.3d 135, 566 N.E.2d 1181 (1991).

{¶13} More specifically, the Tenth District Court of Appeals has observed

as follows regarding a trial court's discretion in the grant or denial of a motion to

supplement the record:

> It is well established that the trial court, in maintaining
> reasonable control over the mode and presentation of evidence,
> has wide discretion to permit evidence to be offered out of order.
> *State v. Bayless* (1976), 48 Ohio St.2d 73, 2 O.O.3d 249, 357
> N.E.2d 1035, paragraph three of the syllabus. This includes the
> decision to allow a party to reopen its case to present additional
> proof. *Columbus v. Grant* (1981), 1 Ohio App.3d 96, 97, 1 OBR
> 399, 399-400, 439 N.E.2d 907, 908-909. Thus, a decision by the
> trial court to allow a party to reopen its case to offer additional
> evidence will be reversed only upon a showing of an abuse of
> discretion. *Id.* An abuse of discretion, "connotes more than an
> error of law or judgment; it implies that the court's attitude is
> unreasonable, arbitrary or unconscionable." *Blakemore v.*
> *Blakemore* (1983), 5 Ohio St.3d 217, 219. When applying the
> abuse of discretion standard, an appellate court may not
> substitute its judgment for that of the trial court. *See State v.*

> *Nerren*, Wayne App. No. 05CA0052, 2006-Ohio-2855, ¶ 5.
> *State v. Howard*, 12th Dist. Warren No. CA2009-11-144, 2010-
> Ohio-2303, ¶ 12.

*Cairelli v. Brunner*, 10th Dist. Franklin No. 15AP854, 2016-Ohio-5535, ¶ 49.

Legal Analysis

{¶14} Cremeans primarily relies on two cases in support of his argument under this assignment of error. First, Cremeans cites *State v. Corthell*, 3d Dist. Seneca No. 13-06-58, 2007-Ohio-4742, and argues that "the trial court's denial of the motion, without explanation, precludes a review of the reasonableness of the decision." The *Corthell* court determined that the trial court abused its discretion when it suppressed from evidence all blood alcohol analysis tests from a motor vehicle crash, as well as the resulting OVI conviction. *Id.* at ¶ 9. A review of *Corthell* indicates that the trial court sua sponte suppressed the evidence at least in part in response to Corthell's motion to dismiss the indictment based upon an allegation of pre-indictment delay. *Id.* at ¶ 17-19. The reviewing court ultimately determined that the trial court's decision suppressing the evidence was arbitrary for several reasons, including the that fact that the trial court failed to give reasons for excluding the evidence. *Id.* at ¶ 22-25. However, *Corthell* cites no authority in support of its reasoning that trial courts must expressly include findings when issuing a ruling excluding evidence. Further, we find *Corthell* to be factually distinguishable primarily because it involved the question of preindictment delay,

which is not at issue here. *Corthell* essentially held that when determining whether to exclude evidence due to pre-indictment delay, trial courts must consider any actual prejudice claimed by a defendant in light of the state's reason for the delay. *Id.* at ¶ 22-25. Again, in the present case there was no issue of pre-indictment delay or other overarching issue requiring any sort of detailed analysis when determining whether to admit or exclude evidence.

{¶15} Cremeans also relies on *State v. Allison*, 10th Dist. Franklin No. 99AP-1375, 2000 WL 1707849, for the proposition that "[t]he unexplained exclusion of relevant and material evidence to the prejudice of the defendant supports a finding that the trial court acted arbitrarily." In *Allison*, the defendant was charged with robbery and three of four of the state's witnesses described the perpetrator as having "little or no chest hair" and "no visible tattoos or scars." *Id.* at *2. At trial, the court refused to allow the defendant to remove his shirt in order to demonstrate to the jury the he did not match the description given by the state's witnesses, despite the fact that there was no objection by the state. *Id.* at *1-2. On appeal, the *Allison* court determined that "[g]iven the nature of the state's evidence, the exclusion of defendant's proffered evidence was prejudicial." *Id.* at *3. The court specifically found that the exclusion of the evidence at issue was prejudicial because the record indicated that "the jury was closely divided on the state's sometime internally inconsistent evidence." *Id.* The *Allison* court reasoned

that "without objection or explanation, the trial court refused defendant's request to admit the evidence." *Id.*

{¶16} Here, we find that the trial court's refusal to admit the evidence at issue in this case occurred at a stage in the proceedings very factually different from both *Corthell* and *Allison*. Neither *Corthell* nor *Allison* involved an after-the-fact attempt to supplement the record with additional evidence after the proceedings at hand had been concluded. For instance, the ruling at issue in *Corthell* was made in anticipation of trial and the ruling in *Allison* was made during trial. Further, the case presently before us does not involve a situation where the trial court acted sua sponte as in *Corthell*, or excluded evidence without any objection by the state as in *Allison*. Instead, the record before us indicates that Cremeans sought to supplement the record with additional evidence after his suppression hearing had been concluded, after he had already had a full and complete opportunity to be heard. Moreover, neither *Corthell* nor *Allison* are binding upon this Court. *See Nationwide Mutual Fire Insurance Company v. Wooten*, 4th Dist. Pike No. 18CA889, 2018-Ohio-4587, ¶ 30, citing *Stapleton v. Holstein*, 131 Ohio App.3d 596, 598, 723 N.E.2d 164 (4th Dist. 1998)("Only Ohio Supreme Court decisions and reported opinions of this court are binding upon trial courts of this district").

{¶17} Further, Cremeans did not seek leave to supplement the record until after the written decision of the trial court denying the motion to suppress had been issued. More specifically, and as noted by the State, the trial court granted Cremeans leave to file a motion to suppress out of rule and the record indicates that the suppression hearing was actually continued twice. Cremeans was represented by counsel and had a full opportunity to be heard on the issue of the suppression of evidence. Cremeans and the State admitted two joint exhibits into evidence and stipulated that the exhibits accurately depicted the intersection at issue. Cremeans' counsel did not request the opportunity to file a supplemental brief or admit additional evidence prior to the conclusion of the hearing. Then, five days after the trial court issued its written decision denying the motion to suppress, Cremeans filed a motion for leave to supplement the record seeking to add as exhibits "additional data embedded in Google maps" as well an image depicting a street view of the intersection.

{¶18} In this case, the motion to supplement the record was met with objection by the State. The State filed a memorandum contra Cremeans' motion for leave arguing that the proposed additional exhibits were irrelevant to the legal issues presented in the case and that the admission of such may lead to confusion of the issues and may require future argument of issues not addressed at the suppression hearing. The State further argued that Cremeans' motion for leave

contained no evidence that the traffic signs depicted in one of the proposed additional exhibits were actually present on the date of the offense, which at that point was 14 months prior. Moreover and importantly, as noted by the State, Cremeans' motion to supplement the record did not represent to the court that the proposed additional exhibits accurately depicted the intersection at issue. Instead, the motion stated that the matter required further consultation with the county engineer.

{¶19} The trial court ultimately issued a decision denying Cremeans' motion for leave to supplement the record. In its decision, the trial court stated that it had "considered the motion, the *Memo Contra* filed by the State of Ohio; and the record in this matter[,]" and that the motion was not well taken. In *Cairelli*, *supra*, the appellants argued that the trial court should have granted their motion to supplement the record which was filed four months after the trial court had issued its decision quieting title and denying a motion for a temporary restraining order and preliminary injunction. *Cairelli* at ¶ 15, 51. The *Cairelli* court ultimately determined that the trial court did not abuse its discretion in denying the appellant's motion to supplement the record which was filed four months after the trial court's decision was issued. *Id.* at ¶ 51. As set forth above, in reaching its decision the court noted that trial courts, in furtherance of "maintaining reasonable

control over the mode and presentation of evidence," have "wide discretion" with regard to permitting evidence to be offered out of order. *Id.* at ¶ 49.

{¶20} We believe the case presently before us is more factually similar to *Cairelli* than it is to either *Corthell* or *Allison* in that it involves the trial court's exercise of its discretion with respect to the admission or exclusion of evidence that is sought to be supplemented to the record out of order. Considering that Cremeans had an opportunity to be fully heard on his motion to suppress, which the trial court granted leave to file out of order, and considering that Cremeans stipulated that the satellite images and maps of the intersection at issue were accurately depicted in the joint exhibits offered by both himself and the State during the hearing, we cannot conclude that the trial court acted arbitrarily in denying his motion to supplement the record out of order. Thus, we cannot conclude that the trial court abused its discretion in denying the motion for leave to supplement the record. Our decision particularly results from the stage of the proceedings in which Cremeans sought to supplement the record, coupled with the facts that the State opposed the motion and the trial court noted its consideration of the State's memo contra, which laid out several potential problems with allowing the record to be supplemented at that time. Accordingly, we find no merit to Cremeans' third assignment of error.

## ASSIGNMENT OF ERROR I

{¶21} In his first assignment of error, Cremeans contends that the trial court erred to his prejudice in finding there was probable cause to believe that he had committed a traffic violation, thus rendering the traffic stop and subsequent detention unlawful. Cremeans argues that the trial court's findings of fact concerning the physical characteristics of the intersection at issue were not supported by competent credible evidence. In support of his argument, Cremeans relies on several of the above-referenced exhibits that were not part of the trial court record below, which have been stricken from the record on appeal. Cremeans further challenges the trial court's conclusion that he was required to use his turn signal when continuing onto Trego Creek Road after stopping at the stop sign at the intersection at issue. He argues that because he was not required to use a turn a signal when proceeding through the intersection, his failure to signal did not provide probable cause for law enforcement to stop his vehicle. In response, the State contends Cremeans' arguments fail because the trial court's findings of fact were supported by competent, credible evidence and the court entered proper conclusions of law.

### Standard of Review

{¶22} Generally, "appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-

1574, 10 N.E.3d 691, ¶ 7, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-

5372, 797 N.E.2d 71, ¶ 8. The Supreme Court of Ohio has explained as follows:

> When considering a motion to suppress, the trial court assumes
> the role of trier of fact and is therefore in the best position to
> resolve factual questions and evaluate the credibility of
> witnesses. Consequently, an appellate court must accept the trial
> court's findings of fact if they are supported by competent,
> credible evidence. Accepting these facts as true, the appellate
> court must then independently determine, without deference to
> the conclusion of the trial court, whether the facts satisfy the
> applicable legal standard.

(Citations omitted.) *Burnside* at ¶ 8.

{¶23} However, to the extent we are required to interpret R.C. 4511.39, our

review is de novo. *See State v. Smith*, 156 Ohio App.3d 238, 2004-Ohio-791, 805

N.E.2d 171, ¶ 6.

Fourth Amendment Principles

{¶24} "The Fourth Amendment to the United States Constitution and the

Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and

seizures." *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d

787, ¶ 15. The Supreme Court of Ohio has held that Article I, Section 14 of the

Ohio Constitution provides the same protection as the Fourth Amendment to the

United States Constitution in felony cases. *State v. Hawkins*, 158 Ohio St.3d 94,

2019-Ohio-4210, 140 N.E.3d 577, ¶ 18. "This constitutional guarantee is protected

by the exclusionary rule, which mandates the exclusion at trial of evidence

obtained from an unreasonable search and seizure." *State v. Petty*, 2019-Ohio-4241, 134 N.E.3d 222, ¶ 11.

{¶25} " '[S]earches [and seizures] conducted outside the judicial process, without prior approval by [a] judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' " (Citations omitted.) *State v. Conley*, 4th Dist. Adams No. 19CA1091, 2019-Ohio-4172, ¶ 17, quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). "Once a defendant demonstrates that he or she was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible." *State v. Dorsey*, 4th Dist. Scioto No. 19CA3874, 2019-Ohio-3478, ¶ 13. In this case, it is clear that Trooper Cassidy acted without a warrant in initiating the traffic stop at issue.

The Initial Stop

{¶26} The record before us indicates that this case involved an investigatory stop. Investigatory stops "must be supported by a reasonable, articulable suspicion that the driver has, is, or is about to commit a crime, including a minor traffic violation." *Petty* at ¶ 12, citing *State v. Hudson*, 4th Dist. Gallia No. 17CA19, 2018-Ohio-2717, ¶ 14 and *State v. Fowler*, 4th Dist. Ross No. 17CA3599, 2018-Ohio-241, ¶ 16, in turn citing *United States v. Williams*, 525 Fed.Appx. 330, 332

(6th Cir. 2013) and *Florida v. Royer*, 460 U.S. 491, 501-507, 103 S.Ct. 1319, 75

L.Ed.2d 229 (1983).  As further explained in *Petty*:

> "To justify a traffic stop based upon reasonable suspicion, the
> officer must be able to articulate specific facts that would warrant
> a person of reasonable caution to believe that the driver has
> committed, or is committing, a crime, including a minor traffic
> violation."  *State v. Taylor*, 2016-Ohio-1231, 62 N.E.3d 591, ¶
> 18 (4th Dist.).  The existence of reasonable suspicion depends on
> whether an objectively reasonable police officer would believe
> that the driver's conduct constituted a traffic violation based on
> the totality of the circumstances known to the officer at the time
> of the stop.  *Id.*
> Moreover, a police officer may stop the driver of a vehicle after
> observing even a de minimis violation of traffic laws.  *See State
> v. Williams*, 4th Dist. Ross No. 14CA3436, 2014-Ohio-4897,
> 2014 WL 5513050, ¶ 9, citing *Whren v. United States*, 517 U.S.
> 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), and *Dayton v.
> Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996), syllabus.
> "[A] traffic stop with the proper standard of evidence is valid
> regardless of the officer's underlying ulterior motives as the test
> is merely whether the officer 'could' have performed the act
> complained of; pretext is irrelevant if the action complained of
> was permissible."  *See State v. Koczwara*, 7th Dist. Mahoning
> No. 13MA149, 2014-Ohio-1946, 2014 WL 1877464, ¶ 22, citing
> Erickson at 7 and 11, 665 N.E.2d 1091.

*Petty* at ¶ 12-13.

{¶27} As stated, " ' "[t]he propriety of an investigative stop by a police

officer must be viewed in light of the totality of the surrounding circumstances." '

" *State v. Strong*, 4th Dist. Ross No. 18CA3663, 2019-Ohio-2888, ¶ 19, quoting

*State v. Eatmon*, 4th Dist. Scioto No. 12CA3498, 2013-Ohio-4812, ¶ 13, in turn

quoting *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044, paragraph one of

the syllabus (1980). The totality of the circumstances approach " 'allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." ' " *Strong* at ¶ 19, quoting *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (overruled in part on separate grounds by *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), in turn quoting *U.S. v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

{¶28} Here, Cremeans was initially stopped for violating R.C. 4511.39 which governs the use of signals for turning or moving left or right on a highway. The statute provides in pertinent part as follows:

> (A) No person shall turn a vehicle or trackless trolley or move right or left upon a highway unless and until such person has exercised due care to ascertain that the movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided.
>
> When required, a signal of intention to turn or move right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle * * *

{¶29} A violation of R.C. 4511.39 has been held to provide sufficient justification to initiate a stop of a defendant's vehicle. *See State v. Williams*, 4th Dist. Ross No. 14CA3436, 2014-Ohio-4897, ¶ 9, citing *State v. Payne*, 4th Dist. Ross No. 11CA3272, 2012-Ohio-4696, ¶ 18 and State v. Harris, 4th Dist. Ross No.

11CA3298, 2012-Ohio-4237, ¶ 13.  Moreover, this Court has held that the observation of a traffic violation provides law enforcement with both reasonable suspicion and probable cause to stop a vehicle.  *State v. Ware*, 2019-Ohio-3885, 145 N.E.3d 973, ¶ 39 (4th Dist.), citing *State v. McDonald*, 4th Dist. Washington No. 04CA7, 2004-Ohio-5395, ¶ 20.

Legal Analysis

{¶30} As set forth above, Cremeans contends that the trial court erred to his prejudice in finding there was reasonable suspicion and probable cause to believe that he had committed a traffic violation, thus rendering the traffic stop and subsequent detention unlawful.  In support of this assignment of error, Cremeans initially argues that some of the factual findings made by the trial court were not supported by the record.  In its decision denying Cremeans' motion to suppress, the trial court made several findings of fact.  Cremeans first challenges the trial court's finding that an eastbound driver proceeding straight through the intersection of Trego Creek Road and Lunbeck Road, after stopping at the stop sign, would travel onto a private driveway after stopping at the stop sign.

{¶31} As explained, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  Here, a review of the record indicates that Cremeans and the State entered two joint exhibits into evidence.  Joint Exhibit A was a paper printout of a satellite view from Google

Maps of the intersection of Trego Creek Road and Lunbeck Road.  Joint Exhibit B

was a paper printout of a map of the same intersection, also from Google Maps.

During the suppression hearing, defense counsel stipulated that although the

exhibits demonstrated "slightly different views * * * they clearly depict the same

intersection and the approaches to it from both west and east."  Further, the trial

court stated during the hearing that it was "familiar with that intersection."

Thereafter, the State asked the defense to stipulate "that the court take judicial

notice of these depictions."  The defense agreed.

{¶32} After reviewing the transcript of the suppression hearing, including

the testimony of Trooper Cassidy, as well as the joint exhibits depicting the

intersection at issue, we conclude this factual finding made by the trial court is

supported by competent credible evidence in the record.  The trial court's finding

that traveling straight through the intersection would result in traveling down a

private driveway, rather than continuing eastbound on Trego Creek Road, is

supported by the joint exhibits as well as Trooper Cassidy's testimony.  Thus, we

find no merit to this portion of Cremeans' first assignment of error.

{¶33} Second, Cremeans challenges the trial court's finding that a driver in

Cremeans' position at the stop sign could have traffic approaching from both the

right and the left.  Again, a review of the intersection, as depicted in the joint

exhibits, coupled with Trooper Cassidy's testimony indicates that when Cremeans

stopped at the stop sign while traveling eastbound on Trego Creek Road, he could have turned left onto Lunbeck Road, proceeded straight onto a private drive, or turned right to continue eastbound on Trego Creek Road. Further, Trooper Cassidy testified that the intersection at issue was a three-way stop, with stop signs at the east and west approach from Trego Creek Road, and when approaching Trego Creek Road from Lunbeck Road. Thus, when stopped at the stop sign, according to the exhibits in evidence, a driver in Cremeans' position at the stop sign would have to make a right turn to continue eastward on Trego Creek Road. Thus, we find no merit to this portion of Cremeans' first assignment of error.

{¶34} Cremeans raises several more arguments in support of his contention that the trial court's factual findings regarding the layout of the intersection at issue were erroneous. For instance, Cremeans argues that "[a] vehicle traveling eastbound through the intersection on Trego Creek Road never leaves its lane of travel despite the existence of a pronounced curve to the right as it travels right through the intersection to cross a bridge." Thus, although Cremeans argues that he did not have to leave his lane of travel to proceed eastbound on Trego Creek Road, he concedes that there was a "pronounced curve to the right" in his lane. He also argues that he "moved through the intersection in a single continuous uninterrupted lane of travel." However, this argument omits the fact that his lane of travel was actually interrupted by a stop sign according to the record. Further,

Cremeans primarily relies on exhibits that are not properly part of the appellate record in support of his arguments that the trial court erred in making certain findings regarding the layout of the intersection. The exhibits that are part of the appellate record simply do not support Cremeans' arguments.

{¶35} Cremeans also challenges the legal conclusion reached by the trial court that he was required to use a turn signal when proceeding through the intersection at issue. As set forth above, Cremeans was initially stopped for a violation of R.C. 4511.39, a violation of which has been held to provide probable cause for an initial stop. *See Williams, supra*, at ¶ 9. Cremeans does not contend he failed to signal, rather he contends that he was not required to signal at the particular intersection at issue. This argument is primarily based upon his underlying argument that the intersection at issue provided him an option to continue straight from Trego Creek Road onto Trego Creek Road after stopping at the stop sign. However, we have already rejected Cremeans' arguments that the trial court's factual findings that he had to a make a right turn at the intersection to continue onto Trego Creek Road were not supported by the record. As discussed above, the trial court found, and the hearing exhibits demonstrated, that if Cremeans proceeded straight through the intersection he would have traveled onto a private driveway.

{¶36} Cremeans further argues that "Trego Creek Road is continuous through the entire intersection," and that an eastbound traveler "never leaves its lane of travel despite the existence of a pronounced curve to the right as it travels right through the intersection to cross a bridge." He contends that "[p]roceeding through the intersection without changing lanes by movement right or left and without engaging in any turn not required to maintain his lane of travel does not trigger a turn signal requirement under an objectively reasonable interpretation the [sic] statute." In making these arguments, Cremeans seems to concede that if he was turning left at the intersection he would have had to use a turn signal, but because he was making a right turn without leaving his lane of travel, he was not required to signal.

{¶37} In *State v. Smith*, the defendant argued she was "not required" to use her turn signal when turning left in a "left turn only" lane. *State. Smith*, 156 Ohio App.3d 238, 2004-Ohio-791, 805 N.E.2d 171, ¶ 6 (4th Dist.) However, this Court rejected her argument, reasoning that "[t]he 'when required' language references the signal requirement in the first paragraph of the statute and is not itself meant to create a conditional aspect to the statute's requirements." *Id.* at ¶ 8, citing *State v. Lowman*, 82 Ohio App.3d 831, 835, 613 N.E.2d 692 ("[T]he phrase 'when required' simply refers to a situation in which the driver intends to change direction on the roadway"). In *Smith*, this Court further observed that " '[u]nder

R.C. 4511.39 and the case law interpreting that statute, a motorist is required to make a signal of intention anytime he turns.' " *Smith, supra,* at ¶ 8, quoting *State v. Beacham*, 4th Dist. Washington No. 03CA36, 2003-Ohio-6211.  Further, the plain language of the statute at issue does not exempt a driver from using a turn signal when turning right and Cremeans cites no authority in support of his argument to the contrary.

{¶38} Finally, Cremeans argues that "[e]ngaging a right turn signal would have alerted no other vehicle at the intersection of a potential conflict with this course of travel."  However, regarding the duty to signal in order to alert other drivers, this Court has held that a turn signal must be used even when turning in a turn-only lane.  *See State v. Smith*, *supra*, at ¶ 9.  Moreover, as recently noted by the Fifth District Court of Appeals:  "The comment to R.C. 4511.39(A) provides, 'the section requires a signal to be given not only before making a right or left turn, but also before changing lanes, passing another vehicle, or pulling into or out of a parking place.' "  *State v. Snell*, 5th Dist. Licking No. 20CA0064, 2021-Ohio-482, ¶ 20, quoting 1975 Legislative Service Comment to R.C. 4511.39(A).

{¶39} Contrary to Cremeans' arguments, the record before us indicates that in order to continue eastbound onto Trego Creek Road, Cremeans had to make anywhere from a 45-degree right turn to a 90-degree right turn after stopping at a stop sign at a three-way intersection.  We cannot conclude that the trial court erred

in finding that Trooper Cassidy correctly interpreted the statute to require the use of a turn signal under R.C. 4511.39(A) under these conditions. *See State v. Beacham*, *supra*, at ¶ 16 (finding that R.C. 4511.39 requires a motorist "to make a signal of intention anytime he turns[,]" and noting the intersection at issue was an approximate 45-degree angle). Although *Beacham* is slightly factually distinguishable in that it involved a left-hand turn rather than a right-hand turn, we nevertheless find it applicable and instructive.

{¶40} Thus, because Cremeans does not dispute that he failed to signal a right turn at the intersection of Trego Creek Road and Lunbeck Road and because we have upheld the trial court's determinations that Cremeans was required to signal a turn under R.C. 4511.39 in light of the conditions that existed at the intersection at issue, we cannot conclude that the trial court erred in denying Cremeans' motion to suppress based upon the ground that the initial investigatory stop was invalid. Further, we conclude that an objectively reasonable police officer would believe that Cremeans' conduct constituted a traffic violation based on the totality of the circumstances known to the officer at the time of the stop and thus, Trooper Cassidy's stop of Cremeans' vehicle was constitutionally valid. Accordingly, we find no merit to Cremeans' first assignment of error and it is overruled.

ASSIGNMENT OF ERROR II

{¶41} In his second assignment of error, Cremeans contends the trial court erred to his prejudice in finding that a reasonable officer would have believed the defendant committed a violation of R.C. 4511.39, which was the sole basis for the stop and detention. Cremeans argues that "[a] threshold question in determining whether Cassidy's interpretation of the statute was objectively reasonable, though mistaken, is whether the statute is ambiguous." The State argues, however, that Trooper Cassidy "used sound, reasoned judgment to conclude that Appellant had run afoul of R.C. 4511.39 * * *." The State further argues that this Court, in *State v. Petty*, held that an officer's mistake of law was objectively reasonable, despite finding the statute at issue was unambiguous. *State v. Petty*, 2019-Ohio-4241, 134 N.E.3 222 (4th Dist.). Cremeans' argument seems to hinge on the underlying assumption that Trooper Cassidy's interpretation of the statute at issue was mistaken and the State's argument seems to overlook the fact that the trial court neither found R.C. 4511.39 was ambiguous, nor found Trooper Cassidy's interpretation of the statute to a be a mistake.

{¶42} The arguments raised under this assignment of error clearly stem from a recent decision by the United State Supreme Court, *Heien v. North Carolina*, 574 U.S. 54, 135 S.Ct. 530, 536, 190 L.Ed.2d 475 (2014), which essentially stands for the proposition that objectively reasonable mistakes of law by law enforcement

officers can still provide reasonable suspicion justifying a stop.  In *Heien*, the

Supreme Court stated as follows:

> As the text indicates and we have repeatedly affirmed, "the ultimate touchstone of the Fourth Amendment is 'reasonableness.' " *Riley v. California*, 573 U.S. 134 S.Ct. 2473, 2482, 189 L.Ed.2d 430 (2014) (some internal quotation marks omitted).  To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them "fair leeway for enforcing the law in the community's protection." *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).  We have recognized that searches and seizures based on mistakes of fact can be reasonable.  The warrantless search of a home, for instance, is reasonable if undertaken with the consent of a resident, and remains lawful when officers obtain the consent of someone who reasonably appears to be but is not in fact a resident. *See Illinois v. Rodriguez*, 497 U.S. 177, 183-186, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).  By the same token, if officers with probable cause to arrest a suspect mistakenly arrest an individual matching the suspect's description, neither the seizure nor an accompanying search of the arrestee would be unlawful. *See Hill v. California*, 401 U.S. 797, 802-805, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971).  The limit is that "the mistakes must be those of reasonable men." *Brinegar, supra*, at 176, 69 S.Ct. 1302.

> But reasonable men make mistakes of law, too, and such mistakes are no less compatible with the concept of reasonable suspicion.  Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law.  The officer may be reasonably mistaken on either ground.  Whether the facts turn out to be not what was thought, or the law turns out to be not what was thought, the result is the same:  The facts are outside the scope of the law.  There is no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law.

*Heien* at 536.

{¶43} Here, the trial court found "that Defendant was required to use a turn signal pursuant to O.R.C. § 4511.39, and his failure to do so provided reasonable and articulable suspicion, and probable cause to believe, that he committed a traffic violation – thereby justifying the traffic stop."  The trial court further stated that "even if the unique intersection at [issue] somehow fell outside the purview of O.R.C. 4511.39 * * * an objectively reasonable officer would have believed Defendant's conduct constituted a traffic violation, based upon the totality of the circumstances known to the officer at the time of the stop[.]"  However, there was no finding by the trial court that the statute at issue was ambiguous.  Because the trial court concluded that law enforcement correctly interpreted the traffic laws to conclude that Cremeans had violated R.C. 4511.39, and because the trial court did not find that the statute was ambiguous, it was not necessary for the court to determine whether an objectively reasonable officer would have believed Defendant's conduct constituted a traffic violation "if the unique intersection at [issue] somehow fell outside the purview of O.R.C. 4511.39[.]"  Further, because we have determined that the record supports the trial court's finding that the trooper correctly interpreted the traffic laws and that Cremeans had violated R.C. 4511.39, we need not go the additional step of determining whether a good faith

but erroneous belief by law enforcement that Cremeans violated the statute would support the denial of the motion to suppress. *See State v. Beacham*, *supra*, at ¶ 1.

{¶44} Cremeans also argues that this Court's holding in *State v. Petty* that an officer's mistake of law was objectively reasonable, despite finding the statute at issue was unambiguous is in conflict with the reasoning of the Fifth District Court of Appeals in *State v. Trout*, 2019-Ohio-124, 128 N.E.3d 900. In *Trout*, the court stated that "*Heien* does not support the proposition that a police officer acts in an objectively reasonable manner by misinterpreting an unambiguous statute." *Id.* at ¶ 22, quoting *United States v. Stanbridge*, 813 F.3d 1032, 1037 (7th Cir. 2016). Cremeans argues that the *Trout* holding essentially means "there can be no reasonably objective mistake in interpreting an unambiguous statute[,]" which he argues is in conflict with our holding in *Petty, supra*.

{¶45} First, we must note that our holding in *Petty* was based largely on the fact that although we did not find R.C. 4511.36(A)(2) to be ambiguous, another appellate district had found the statute to be ambiguous, and this Court had previously stated, albeit in dicta, that R.C. 4511.36(A) could "arguably" be interpreted to require a motorist, when making a left turn, to turn into the lane closest to the center lane. *Petty* at ¶ 25. Further, the concurring opinion in *Petty* reluctantly agreed with the majority, essentially doing so only because of the sense that its hands were tied, so to speak, believing the Court to the bound by prior

precedent. Thus, we cannot conclude that our decision in *Petty* is in direct conflict with *Trout*. Further, as stated above, we do not reach this legal question because it is not part of the actual controversy before us. The fact that we do not reach the argument is further supported by *Trout*. *Trout* at ¶ 22 ("The language of the statute is clear; therefore, the trial court did not need to address the question of whether the troopers acted in an objectively reasonable manner").

{¶46} In conclusion, we have found no merit to any of the assignments of error raised by Cremeans on appeal. Thus, we cannot conclude the trial court erred in denying either his motion to suppress or his motion for leave to supplement the record. Accordingly, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Wilkin, J. concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**